349 So.2d 649 (1977)
Richard CRAVERO, Ronald Chandler and Robert Greenwood, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 75-1519, 75-1628, 75-1913, 75-1914, 75-2022, 76-506, 76-507 and 76-509.
District Court of Appeal of Florida, Third District.
July 26, 1977.
*650 Grusmark, Jaffe & Karten, Miami, for appellants.
Robert L. Shevin, Atty. Gen., and Linda Collins Hertz, Asst. Atty. Gen., for appellee.
Before HENDRY, C.J., and PEARSON and NATHAN, JJ.
PER CURIAM.
Appellants Richard Cravero, Ronald Chandler and Robert Greenwood were jointly tried before a jury on a single indictment for conspiracy to commit murder and first degree murder, all arising out of the alleged murder of one Stanley Harris in the early morning hours of February 14, 1974. Harris had been killed by a volley of gunfire while standing next to his parked car in the parking lot of a bar called Pirate's *651 Cove. Defendants were found guilty, convicted and sentenced on both counts. In this consolidated appeal, they allege numerous errors which will be discussed individually.
Defendants first argue that the trial court erred in failing to grant an evidentiary hearing where they had alleged in a motion to vacate the existence of newly discovered evidence which could have affected the jury's verdict. This "new" evidence was a police report filed with the North Miami Beach Police Department. The report contained statements by a purported witness to the crime. According to this witness, he had observed a late model car driving into the parking lot at Pirate's Cove with its lights out on the morning of the murder. This first automobile stopped next to a second automobile which was parked with its lights on. The witness then heard loud conversation and a multitude of shots, at which point the first vehicle "took off" from the lot, heading southbound in the northbound lane of Biscayne Boulevard, running a red light in the process.
We agree with the trial judge's ruling that the motion to vacate was without merit. Defendants' allegations concerning the materiality of the statements recounted in the North Miami Beach Police report are not supported by the record. If anything, they tend to corroborate elements of the testimony of the State's chief prosecution witness. The fact that these statements were given to the police by the only "eyewitness" to the crime is of no import here, since they are in no way inconsistent with the evidence and testimony elicited at defendants' trial.
In Briskin v. State, 341 So.2d 780 (Fla.3d DCA 1977), this court ruled that evidence withheld by the police:
"should be examined in the context of the entire record to determine whether it reflected upon the defendant's guilt. If there is no reasonable doubt as to the defendant's guilt whether or not the additional evidence is considered, then no reversible error has been committed." Id. at 782-83.
As authority for the quoted proposition, we cited United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In modifying the disclosure doctrine first expounded in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court noted in Agurs that prosecutors have no duty "to provide defense counsel with unlimited discovery of everything known by the prosecutor," and that the prosecutor's duty to provide certain evidentiary material absent a specific request derives "from the obviously exculpatory character" of the evidence. Agurs, supra, 427 U.S. at 106, 96 S.Ct. at 2399, 49 L.Ed.2d at 351.
We find in this case that the statements in the North Miami Beach Police report were not obviously exculpatory nor do we feel that they reflected upon defendants' guilt when examined in the context of the entire record.
We further note in this regard that the name of the alleged eyewitness was provided by the State in its list of persons having information concerning the charged offenses. This list included the name of the North Miami Beach officer who submitted the initial investigatory report. The character of the undisclosed material was such that even the most rudimentary questioning would have brought it to light. Given these facts and our belief that the North Miami Beach Police report in no way reflected upon the defendants' guilt, we hold that the trial court properly denied defendants' motion to vacate.
We next consider defendants' contention that the trial court's denial of motions for severance made during trial deprived defendants of a fair trial. The motions were directed at remarks made by the State's primary witness upon cross-examination by defendant Cravero's counsel, to the effect that the witness had become a government informer to "[put] a stop to these murders." Counsel for the other defendants *652 insisted that a severance was necessary to allow Cravero's attorney to impeach the informer's references to other murders, while remaining counsel argued that they at no time wished to "open the door" to such a line of questioning.
The trial judge stated that he did not feel that the remark concerning other murders referred to the defendants. He then noted that the defendants' attorneys had engaged in a "cooperative effort" throughout the course of the proceedings.
The granting or denying of a motion for severance lies within the discretion of the trial judge. See Rollins v. State, 148 So.2d 274, 276 (Fla. 1963), and cases cited therein. Denial of such a motion will constitute abuse of discretion only where the record indicates that the defendant was injured thereby. Jackman v. State, 140 So.2d 627 (Fla.3d DCA 1962), citing Suarez v. State, 95 Fla. 42, 115 So. 519 (1928).
No such injury was demonstrated here. The record clearly establishes that counsel for all the defendants collaborated closely both before and during the trial; any allegation of antagonistic defenses is unfounded. The trial judge repeatedly gave laborious instructions to the jury as to the effect of evidence which was admissable against one defendant but not the others. These facts alone are supportive of the trial court's ruling that severance was not in order. See Roberts v. State, 164 So.2d 817 (Fla. 1964). In addition, however, any adverse inference which may have arisen from the testimony of the State's witness was cured by his later admission that there had been no other murders before that of Stanley Harris and that he had no other first-hand knowledge of subsequent murders. We therefore hold that the trial court properly denied all motions for severance.
The last two points on appeal which we will consider concern the admissibility of photographs of the murder victim and the sufficiency of the evidence.
The trial judge personally examined a number of allegedly gruesome photographs prior to their admission into evidence upon objection by defendants respective counsel. He rejected some while admitting five others, apparently accepting the prosecutor's argument that the photographs were relevant to the question of premeditation and to establish that the victim had been killed by more than one person using a variety of weapons.
The Supreme Court of Florida has held that allegedly gruesome photographic evidence is admissible where it is relevant to establish at least some aspect of the crime. Bauldree v. State, 284 So.2d 196 (Fla. 1973). Using this standard, we find that no error was committed in admitting the photographs of the victim into evidence.
We further find that the evidence was sufficient as a matter of law to support the jury's verdict in all three instances. See State v. Smith, 249 So.2d 16 (Fla. 1971); Borders v. State, 312 So.2d 247 (Fla.3d DCA 1975); see also Spinkellink v. State, 313 So.2d 666 (Fla. 1975); Resnick v. State, 287 So.2d 24 (Fla. 1973).
Defendants remaining arguments are without merit. Therefore, in accordance with our findings as stated above, the defendants' convictions are hereby affirmed.
Affirmed.