634 So.2d 187 (1994)
Michael DANIELS, et al., Appellants,
v.
The STATE of Florida, Appellee.
Nos. 91-2458, 91-2463 and 91-2500.
District Court of Appeal of Florida, Third District.
March 15, 1994.
Rehearing Denied April 19, 1994.
*189 Bennett H. Brummer, Public Defender, and May L. Cain, Sp. Asst. Public Defender, Miami, Geoffrey C. Fleck, South Miami, and Lee Weissenborn, Coral Gables, for appellants.
Robert A. Butterworth, Atty. Gen., and Angelica D. Zayas, Asst. Atty. Gen., for appellee.
Before HUBBART, GERSTEN and GODERICH, JJ.
GODERICH, Judge.
The defendants, Michael Daniels, Rodney Rogers, and James Cochran, appeal from final judgments of conviction and sentence. We affirm all three convictions and the sentence imposed upon Rogers. But we reverse the sentences imposed upon Daniels and Cochran and remand for a new sentencing hearing.

I. FACTS
The police arrested the defendants after entering the apartment where they all were and finding property that had been taken in a prior robbery. The defendants were charged with numerous counts of armed robbery, burglary, false imprisonment, battery, and kidnapping against several victims. Pursuant to a defense motion to sever the charges, the state agreed to drop all charges except those counts which dealt with the armed robberies, burglary, kidnappings, and thefts of property from Romeo and Soledad Zarco on February 12, 1989. The trial court denied Cochran's motion to sever defendants and a defense motion to exclude evidence concerning the other robberies.
Following a hearing on the matter, Judge Leonard E. Glick denied a defense motion to suppress the oral and physical evidence obtained by the state following the defendants' arrests. The case was assigned to Judge Fredricka G. Smith for trial and the defendants and the state agreed to waive trial by jury. Following opening argument, Judge Smith revisited the Williams Rule question and ruled that the evidence pertaining to the Bruening and Watson robberies would be admissible to show identity, but the evidence *190 of the other robberies were not similar enough to warrant admission. Judge Smith advised the defendants that she had heard certain evidence before excluding it from trial. However, all three defendants chose to proceed without a jury.
Kenneth Reed, a friend of Rogers, identified all three defendants and described in detail the events on the night of the Zarco robbery. While giving Reed a ride home, Daniels suggested they rob the Zarco's home. Rogers asked Reed to drive around and wait for everyone. Reed drove everyone back to the apartment. After Reed gave a sworn statement to the police implicating the defendants, he received threatening calls from Daniels and Rogers offered him $500 to get out of town. During cross-examination, Daniels' and Cochran's attorneys attempted to impeach Reed based on the sworn police statement. Rogers' attorney attempted to impeach Reed with his pretrial deposition. During redirect, the state offered Reed's sworn police statement into evidence as a prior consistent statement to rebut the implication of recent fabrication. The state also offered into evidence the recordings of the threatening calls. Cochran did not object. Daniels objected on the ground that the tapes were more prejudicial than probative. Rogers objected because the tapes were so incoherent that the court would have to use the transcripts as evidence, not as an aid to understanding the tapes.
Cochran testified on his own behalf. Cochran stated that he had never met Daniels prior to the evening of his arrest and that the sneakers placed in evidence were not his shoes. During cross-examination, Cochran denied ever seeing a picture of himself with the codefendants. Then the state called Detective Jeffrey Lewis, who presented pictures of all the defendants together.
Following closing argument, the trial court excluded the evidence of the Bruening and Watson robberies. The court found the evidence against the defendants in the Zarco case to be overwhelming and declared the defendants guilty of two counts of armed robbery with a firearm, two counts of armed kidnapping with a firearm, and one count of armed burglary with a firearm.
The trial court declared Cochran a habitual violent felony offender and sentenced him to three consecutive life sentences for armed robbery and burglary (counts 27, 29 and 33), each with a minimum mandatory fifteen year term, and two additional concurrent life sentences for kidnapping (counts 34 and 35).
Rogers was declared a habitual felony offender and sentenced to three consecutive life sentences for armed robbery and burglary (counts 27, 29 and 33). The court also imposed two concurrent life sentences for kidnapping (counts 34 and 35), each to run concurrent with the other sentences imposed. There was no minimum mandatory sentence.
The court declared Daniels a habitual violent felony offender and sentenced him to three consecutive life sentences for armed robbery and burglary (counts 27, 29 and 33). Daniels was also sentenced to two life sentences for kidnapping (counts 34 and 35), each to run concurrent with the life sentence imposed for count 29. A fifteen year minimum mandatory term was imposed for all five counts. The defendants challenge their convictions and sentences on several grounds.

II. ISSUES ON APPEAL OF THE JUDGMENTS OF CONVICTION

A.
The first issue, which was raised by all three defendants, is whether the trial court erred in allowing the state to introduce evidence of two other collateral and unrelated home invasion robberies and then announcing it would not consider such evidence. The rule, as reiterated in State v. Arroyo, 422 So.2d 50, 51 (Fla. 3d DCA 1982), is that where a trial judge sitting as a fact finder "erroneously admits evidence, he is presumed to have disregarded the evidence, and the error of its admission is deemed harmless." This presumption is overcome only if the record discloses that the trial judge relied upon the erroneous evidence. Id.
In the instant case, the trial judge explained to the defendants that evidence of two of the four robberies referred to during opening statements was inadmissible under *191 Williams v. State, 68 So.2d 583 (Fla. 1954) and then she gave the defendants the option of moving for mistrial and having the case heard by a jury or proceeding with her sitting as the trier of fact. The defendants chose to rely on the judge's ability to disregard the inadmissible evidence. Moreover, because the trial judge expressly stated that she was excluding evidence of the noncharged crimes and that the evidence of guilt in the charged crimes was overwhelming without the excluded evidence, the defendants have failed to overcome the presumption that the court's verdict was based solely upon admissible evidence. See Arroyo, 422 So.2d at 51.

B.
The second issue, which was raised by all three defendants, is whether the trial court erred in permitting the state to introduce into evidence Reed's prior statement to the police. Cochran and Rogers contend that the court erred in allowing Reed's statement into evidence because the state failed to lay a proper predicate. However, Rogers only objected arguing that the statement was hearsay and Cochran never raised an objection. Since Rogers and Cochran did not raise a contemporaneous objection specifically challenging the fact that Reed did not authenticate the statement or say whether the statement presented to him was a true and accurate representation of the police statement signed by him when the state offered the statement into evidence, they cannot raise this specific objection on appeal. See State v. Rhoden, 448 So.2d 1013 (Fla. 1984); Castor v. State, 365 So.2d 701 (Fla. 1978).
With regard to Reed's statement, all three defendants also contend that the trial court erred in admitting the statement into evidence where the statement was improper evidence of a prior consistent statement and hearsay. A witness' testimony may not be corroborated by his own prior consistent statement, except that such statement may become relevant if an attempt is made to show recent fabrication or to rebut a suggestion of improper motive. Jackson v. State, 599 So.2d 103 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 612, 121 L.Ed.2d 546 (1992); Van Gallon v. State, 50 So.2d 882 (Fla. 1951); Alexander v. State, 603 So.2d 658 (Fla. 3d DCA 1992).
In the instant case, the defendants suggested that Reed was lying to get beneficial treatment from the state. Therefore, the trial court properly allowed the state to introduce Reed's sworn statement into evidence to rebut the defendants' implications of improper influence, motive or recent fabrication.

C.
Rogers and Cochran also contend that the trial court erred by permitting the state to refer to a photograph of them with others as a picture of the "Florida Jack Boys" where this comment evidenced the prosecutor's belief that the defendants belonged to a gang of home invasion robbers. We disagree.
We find that the trial court properly denied the defendants' motions for mistrial following the state's questioning of Cochran regarding a photograph of the defendants labeled "Florida Jack Boys" where the evidence was offered to rebut Cochran's claim that he had not met his codefendants prior to the night of his arrest, not to prove that the defendants were members of a gang of home invasion robbers. The photograph was admissible to prove that Cochran had met the other defendants prior to his arrest. Moreover, since the trial judge expressly stated that there was no evidence that any of the defendants were in a gang or that any of them had been in prison prior to the instant charges, she must have ignored the prosecutor's comment. State v. Arroyo, 422 So.2d 50 (Fla. 3d DCA 1982).

D.
Next, Daniels contends that the trial court erred in failing to sever the trial of Daniels from the trial of the two codefendants where he was prejudiced by Cochran's decision to testify at trial and by Reed's testimony as to Rogers' inculpating statements which he could not rebut since Rogers *192 did not take the stand and testify. We disagree.
The granting or denying of a motion for severance lies within the sound discretion of the trial judge. Rollins v. State, 148 So.2d 274, 276 (Fla. 1963); Cravero v. State, 349 So.2d 649 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 129 (Fla. 1978). A denial of a motion for severance constitutes an abuse of discretion only if the defendant can demonstrate that he was injured by having a joint trial. Cravero, 349 So.2d at 652.
The trial court properly denied Daniels' motion to sever his trial from that of his codefendants where the defenses were not antagonistic. See Id. All defendants denied participation in the robberies and none of the defendants attempted to blame the others. All three defendants seemed to be working closely together with a common strategy of impeaching Reed and suggesting that others might be responsible for the robberies. See Id. Moreover, Daniels did not establish the necessity for severance.
To obtain a severed trial based on a defendant's desire to offer a co-defendant's potentially exculpatory testimony, the defendant must show: (1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the codefendant will in fact testify if the cases are severed.
Taylor v. State, 472 So.2d 814, 815 (Fla. 3d DCA 1985). Daniels did not proffer the need for the testimony of either codefendant, the substance of the testimony sought to be elicited, nor the exculpatory nature and effect of said testimony. Furthermore, Daniels never asserted a desire to call either Rogers or Cochran to the stand. Thus, the record clearly supports the trial court's denial of Daniels' motion for severance.

E.
Daniels also contends that he was denied the right to fully cross-examine Reed, the state's chief witness. We disagree.
The scope and control of cross-examination is within the trial court's discretion. Medina v. State, 466 So.2d 1046 (Fla. 1985); Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981). We find that the trial court properly exercised its discretion in limiting the scope of Daniels' cross-examination of Reed to probative and relevant testimony.

F.
Daniels further contends that the trial court erred in allowing the state to introduce into evidence the alleged tape recordings of telephone conversations between Reed, Daniels and Rogers where the tapes were not properly authenticated and were inaudible. We disagree.
Authentication is necessary to establish that "the matter in question is what its proponent claims." § 90.901, Fla. Stat. (1991). A trial court must evaluate each piece of evidence on its own merits since there is no specific list of authentication requirements. Justus v. State, 438 So.2d 358 (Fla. 1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984). Unless clearly erroneous, the trial court's determination will be sustained. Id. Here, Reed testified about the threats he received, he identified the tapes, explained how they were made, and identified the voices on the tape. This showing was sufficient to establish that the tapes were what the state claimed them to be.
"Partial inaudibility or unintelligibility is not a ground for excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible." Odom v. State, 403 So.2d 936, 940 (Fla. 1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). The admission of partially inaudible tapes lies within the discretion of the trial court and should not be reversed in the absence of an abuse of that discretion. Id.; Gonzalez v. State, 571 So.2d 1346 (Fla. 3d DCA 1990), rev. denied, 584 So.2d 998 (Fla. 1991).
A review of the trial transcript reveals that the tape had sufficient relevant portions that were audible to justify its admission. See Gonzalez, 571 So.2d at 1346. The trial court did not abuse its discretion in admitting the tapes into evidence.

*193 G.
Rogers contends that the trial court erred in denying his motion to suppress the evidence found at his apartment where they seized the evidence without a warrant despite the fact that it was not in plain view. He further contends that the state made no showing of exigent circumstances which would have prohibited them from obtaining a warrant.
Under the plain view doctrine, a police officer is allowed to conduct a search if the object is so placed that it may be seen by an officer from where he has a right to be and it is apparent to the officer that the object constitutes evidence of a crime. Neary v. State, 384 So.2d 881 (Fla. 1980); Albo v. State, 379 So.2d 648 (Fla. 1980). The officer can also arrest those persons in whose immediate control the seized objects may be. Wright v. State, 471 So.2d 155 (Fla. 3d DCA 1985).
When Detective Hernandez went to the apartment to speak to the defendants, the lights were turned off and he heard a commotion inside. When Rogers opened the door and invited the detective in to use the telephone, Detective Hernandez saw distinctive furniture, which he knew had been reported stolen, in plain view in the hallway and living room. While Detective Hernandez was at the front door with Rogers, another detective observed Daniels attempting to exit through a rear window. Based upon the foregoing, the officers were justified in seizing the evidence and in arresting the defendants without a warrant. See Wike v. State, 596 So.2d 1020 (Fla. 1992); Wright, 471 So.2d at 155. Thus, the trial court properly denied Rogers' motion to suppress.

III. SENTENCE
We come now to the question of sentencing. Daniels and Cochran contend that the trial court erred in enhancing their sentences under section 775.084, Florida Statutes (Supp. 1988) where the trial court failed to make the required findings. We disagree.
Section 775.084(1)(b), Florida Statutes (Supp. 1988), defines a habitual violent felony offender as:
[A] defendant for whom the court may impose an extended term of imprisonment, as provided in this section, if it finds that:
1. The defendant has previously been convicted of a felony or an attempt or conspiracy to commit a felony and one or more of such convictions was for:
a. Arson,
b. Sexual battery,
c. Robbery,
d. Kidnapping,
e. Aggravated child abuse,
f. Aggravated assault,
g. Murder,
h. Manslaughter,
i. Unlawful throwing, placing, or discharging of a destructive device or bomb, or
j. Armed burglary.
2. The felony for which the defendant is to be sentenced was committed within 5 years of the date of the conviction of the last prior enumerated felony or within 5 years of the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for an enumerated felony, whichever is later;
3. The defendant has not received a pardon on the ground of innocence for any crime that is necessary for the operation of this section; and
4. A conviction of a crime necessary to the operation of this section has not been set aside by any post-conviction proceeding.
It is clear from the language of section 775.084 that only one prior enumerated felony is necessary to qualify a defendant for treatment as a habitual violent felony offender.
Under section 775.084(3), the procedure for determining if the defendant is a habitual violent felony offender is as follows:
(a) The court shall obtain and consider a presentence investigation prior to the imposition of a sentence as a habitual felony *194 offender or a habitual violent felony offender.
(b) Written notice shall be served on the defendant and his attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence so as to allow the preparation of a submission on behalf of the defendant.
(c) Except as provided in paragraph (a), all evidence presented shall be presented in open court with full rights of confrontation, cross-examination, and representation by counsel.
(d) Each of the findings required as the basis for such sentence shall be found to exist by a preponderance of the evidence and shall be appealable to the extent normally applicable to similar findings.
While imposing Daniels' sentence, the trial judge stated that she was declaring Daniels a habitual violent felony offender based upon his prior conviction for robbery on July 31, 1987, and the fact that the instant offenses were committed soon after his release from jail following his first conviction. While imposing Cochran's sentence, the trial judge stated that she was declaring Cochran a habitual violent felony offender based on his prior convictions for robbery with a firearm, unlawful possession of a firearm and grand theft on August 3, 1987. The trial judge further stated that she had considered the presentence investigation reports for both defendants, found that there had been prior notice as required and concluded by stating that she was making all the findings that she thought were necessary under section 775.084.
The state introduced certified copies of the defendants' prior convictions and the trial court expressly found that Daniels and Cochran each met the definition of a habitual violent felony offender. See State v. Rucker, 613 So.2d 460 (Fla. 1993); Parker v. State, 546 So.2d 727 (Fla. 1989). Any failure to make more specific findings was harmless where neither defendant now asserts that his prior conviction was pardoned or set aside. See Thomas v. State, 618 So.2d 155 (Fla. 1993); Rucker, 613 So.2d at 460. Accordingly, we find that the trial court properly declared Daniels and Cochran to be habitual violent felony offenders.
However, as the state properly concedes, the record is not clear as to whether the trial judge believed she had any discretion in imposing sentence. The state improperly argued that the trial judge had no alternative but to sentence the defendants to life imprisonment with a minimum mandatory term. Under section 775.084(4)(b), the trial court has discretion when sentencing a defendant as a habitual violent felony offender. Cotton v. State, 588 So.2d 694 (Fla. 3d DCA 1991), aff'd, 595 So.2d 957 (Fla. 1992). Accordingly, we reverse the sentences imposed upon Daniels and Cochran and remand for a new sentencing hearing. We also find that the remaining points raised by Daniels lack merit.
Convictions affirmed; Daniels' and Cochran's sentences reversed and remanded for a new sentencing hearing.