589 So.2d 933 (1991)
Alvin LOWDER, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-1399.
District Court of Appeal of Florida, Third District.
October 8, 1991.
Rehearing Denied January 3, 1992.
*934 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Angelica D. Zayas, Asst. Atty. Gen., for appellee.
Before FERGUSON, JORGENSON and GERSTEN, JJ.
FERGUSON, Judge.
This case pitted the credibility of a police officer against that of the defendant and his witnesses on a single identification issue  whether the defendant was the person seen earlier engaged in nighttime hand-to-hand drug transactions.
Lowder was convicted of possession with intent to sell cocaine within 1000 feet of a school and sentenced to a three and one-half year prison term. He contends in this appeal that his trial was unfair because of the improper and prejudicial suggestion of a police witness that the place of the illegal act, an inner-city community, was a known narcotics area, and that people who carry large amounts of cash are drug dealers. We hold that the testimony was improper, and that it does not appear in the record, beyond a reasonable doubt, that the outcome of the trial would have been the same without the prejudicial testimony.
At trial Detective Delguidice testified that while conducting a surveillance he saw a suspect walk over to an area next to an apartment building, place a brown paper bag on the ground, and walk away. He further testified that later the suspect returned to the paper bag, took out an item, handed it to another individual, and took back something in exchange. After observing several repeats of the routine, Detective Delguidice ordered a back-up team to make an arrest at the nearby apartment building based on a description of clothes worn by the person under surveillance. Another unit was directed to confiscate the brown bag. Based on his attire, Lowder was singled out from a group of other men for an arrest. During the search incident to the arrest, police officers found over $1,200 in Lowder's pocket. The brown paper bag on the ground was found to contain packets of cocaine. The record is not clear as to the time lapse between the last of the transactions and Lowder's arrest.
Lowder testified on his own behalf, explaining that he had been visiting with two friends for thirty-five to forty-five minutes at the apartment building near the site of the arrest. Two defense witnesses corroborated Lowder's testimony that as he was leaving he was seized by police officers, made to "get up against a wall," searched, and taken into custody. He denied any ownership of the brown paper bag or that he had ever been at the location where the bag was found. He also explained that of the $1,290 found on him, $800 had been given to him by his girlfriend to buy a used car and that most of the remaining money was winnings from Jai-Alai where he had been earlier in the evening. That testimony was corroborated by the girlfriend. The issue at trial was whether Lowder was the person seen earlier by Detective Delguidice making transactions from the brown bag.
In response to initial questioning by the prosecutor, the detective explained, although of dubious relevance, that he had a particular reason for being in the area:
Witness: At this particular location is a known narcotic 
Defense Counsel: Objection.
Although a cautionary instruction was given to the witness, to relate the events "without making reference to what it is known as", no curative instruction was given to the jury. In what could be fairly interpreted as a completion of his answer to the question to which an objection had been sustained, the officer told the jury the police were in the area "to check to see if narcotics sales were taking place." On the basis of that prejudicial testimony, Lowder contends the case should be retried.
The defendant contends that the trial court committed a second reversible error in allowing the prosecution to elicit the testimony of the police detective that, based on his expertise as a police officer in the field of narcotics, there is a correlation between carrying large amounts of cash *935 and selling illegal drugs. The colloquy was as follows:
Q. Based upon your experience as a police officer in the area of narcotics, is there any correlation between narcotics and large amounts of cash?
Defense Counsel: I am going to object to that question, Judge.
Court: Overrule the objection.
Q. You can answer.
A. Yes, there is.
Q. What is that?
A. People who sell narcotics usually have cash in their pocket.
On the first issue we conclude that, in characterizing the location as a narcotics area, Detective Delguidice's testimony went far beyond the mere reporting of observations made at or near the time of the arrest. It is well settled that reference to the area in which a defendant is arrested as a location known to be inhabited by drug dealers is prohibited because such reference is irrelevant to the issue of guilt. Beneby v. State, 354 So.2d 98 (Fla. 4th DCA), cert. denied, 359 So.2d 1220 (Fla. 1978). Evidence of this type, impugning the area's reputation, is introduced only to show bad character or propensity, and may unduly prejudice the jury. Beneby, 354 So.2d at 99. In a prosecution for possession of illegal drugs, the fact that a police officer knows that an arrest scene is a reputed narcotics area does not prove anything in issue and is "patently prejudicial". Gillion v. State, 573 So.2d 810 (Fla. 1991).
On the second point, we hold that every defendant has the right to be tried based on the evidence against him, not on the characteristics or conduct of certain classes of criminals in general. Florida courts have frequently criticized the use of testimony from police officers regarding their experience with other criminals as substantive proof of a particular defendant's guilt or innocence.
In Nowitzke v. State, 572 So.2d 1346, 1355 (Fla. 1990), the supreme court held that testimony concerning past crimes that did not involve the defendant could not be used to prove that the defendant committed the crimes at issue. In that case the court rejected, as completely improper, a police officer's statement that he knew drug addicts who stole from their families and committed homicides to support their drug habits. The only purpose of testimony regarding criminal behavior patterns "is to place prejudicial and misleading inferences in front of the jury." Id. at 1356. Accord Dawson v. State, 585 So.2d 443 (Fla. 4th DCA 1991) (rejecting, as prejudicial, police officer's statement that people on crack generally rob and steal to get money).
Similarly, in Hargrove v. State, 431 So.2d 732 (Fla. 4th DCA 1983), the court condemned, as irrelevant, the testimony of a police officer that, based on his experience, the post-arrest statement of the defendant that "I don't mess with the stuff" is a phrase uttered frequently by drug dealers in an attempt to throw suspicion off themselves. See also Osario v. State, 526 So.2d 157 (Fla. 4th DCA 1988) (officer's testimony concerning his experience with common drug-courier practices was irrelevant and prejudicial); Kellum v. State, 104 So.2d 99 (Fla. 3d DCA 1958) (testimony that other police officers committed larceny was irrelevant in prosecution of police officer for larceny); Dorsey v. State, 276 Md. 638, 350 A.2d 665 (1976) (where defendant gave post-arrest denial of involvement in robbery, it was error for prosecution to elicit irrelevant testimony from arresting officer that eighty percent of the one-thousand individuals he had arrested over his career had also denied involvement in the crime).
Based on the sound rationale of those cases, we hold that it was also error to allow a police officer to testify as an expert as to a relationship between possessing $1,290 in cash and dealing in narcotics.[1] Any probative value the expert *936 testimony might have had was substantially outweighed by its prejudicial impact. § 90.403, Fla. Stat. (1989). Further, the defendant's possession of cash was nonexpert evidence the jury was free to consider, along with the other competent evidence such as the amount, condition, sources, and given reasons for carrying the currency, in a common-sense resolution of the disputed issue. See Loftin v. Wilson, 67 So.2d 185 (Fla. 1953) (a request for an instruction that the distance in which train can be stopped when emergency brakes are applied should be based on expert testimony was properly refused as it foreclosed the jury's application of common sense and every day experiences).
There is no rational basis for a policy statement that from the possession of a relatively small amount of cash it may be inferred, as a matter of expertise, that one is a criminal. Carrying cash, rather than a credit card, may have much to do with socio-economic status and cultural background. There may be many other reasons why people carry cash; for example, cash buying is the choice of those who prefer that their private spending habits not be monitored by easily accessible computers.
With the defendant's case turning on the believability of his testimony, along with the testimony of his witnesses, against the identification testimony of a single officer, it cannot be said that the patently prejudicial testimony was harmless.
Reversed and remanded for a new trial.
JORGENSON, J., concurs.
GERSTEN, Judge.
I respectfully dissent.
Appellant was observed by a police officer as appellant conducted hand to hand drug sales. Appellant contends that his conviction was tainted by two reversible errors: (1) that the officer testified that the area in which appellant was arrested was an area known for drug sales; and (2) that the officer improperly testified that, in his opinion, there is a correlation between drug sales and large amounts of cash.
Although it is evident that the officer started to testify about the location as a known drug area, his answer was cut short by an objection. Appellant's motion to strike the partial answer was granted, and the officer was admonished.
It is error to refer to the area where a defendant is arrested as a high crime area because such a reference may be prejudicial and has no probative value. Gillion v. State, 573 So.2d 810 (Fla. 1991).
However, any error based on the characterization of the area is subject to harmless error analysis and can be cured by instructions from the court. Gillion v. State, 573 So.2d at 812-813; Robinson v. State, 561 So.2d 1264 (Fla. 3d DCA 1990).
The trial court properly sustained the objection, granted a motion to strike, and instructed the officer not to characterize the area. I find that the trial court committed no error. Furthermore, any error was harmless in light of the officer's eyewitness testimony regarding the drug sales. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Finally, I find no error in appellant's second point on appeal. The issue is not the credibility or weight afforded the officer's assertions, but rather the admissibility of his opinion testimony. An officer with specialized knowledge can express his opinion on the relationship between large amounts of cash and drug transactions. Williams v. State, 538 So.2d 73 (Fla. 4th DCA 1989).
Accordingly, I would affirm.
NOTES
[1] This holding may be contrary to that of the fourth district in Williams v. State, 538 So.2d 73 (Fla. 4th DCA 1989). Williams, a one paragraph opinion of a divided court which does not indicate the amount of cash, relies on a civil case involving an automobile accident reconstructionist. Two other federal cases cited in Williams, United States v. Ginsberg, 758 F.2d 823 (2d Cir.1985) and United States v. Daniels, 723 F.2d 31 (8th Cir.1983), are distinguishable.

In Ginsberg, the court upheld a ruling which allowed a police agent to testify that beepers and codes are commonly used by narcotic dealers. The Daniels court approved expert testimony of a drug agent that in his experience drug dealers commonly register cars and apartments in names other than those of the actual users. Carrying $1,290 in cash, unlike the activities in those cases, is entirely consistent with innocent behavior.