FERGUSON, Judge
(concurring specially).
This appeal challenges the sentence enhancement part of a new anti-drug statute. The provision denies eligibility for parole and statutory gain-time to a person convicted of selling, purchasing or delivering certain controlled substances, regardless of the quantity, near or on the property of a “public housing facility.” [1] I would be dissenting in part if another panel of this court had not already decided the issue. In Williams v. State, 618 So.2d 323 (Fla. 3d DCA 1993), this court held constitutional section 893.13(l)(i), Florida Statutes (1991). In my opinion, acting Chief Judge Campbell’s opinion in State v. Thomas, 616 So.2d 1198 (Fla. 2d DCA 1993), holding the statute unconstitutional, is better reasoned. It was not necessary, however, to declare the statute void in its entirety.
State v. Thomas rejected the holding and conclusion in Brown v. State, 610 So.2d 1356 (Fla. 1st DCA 1992), rev. granted, 621 So.2d 431 (Fla.1993), that the phrase “public housing facility” is not unconstitutionally vague because “a person of ordinary intelligence should know what was intended by the phrase.” Thomas explains by persuasive examples exactly why the statute would be difficult to apply uniformly. Disagreeing with Brown, the Thomas court avoided the classification examination as a separate basis for a constitutional challenge.[2]
This court has now assigned the phrase “public housing facility” a definition that is commonly understood, and by doing so, has necessarily shifted the focus to the classification issue. Public housing is not only “low-rent housing, owned, sponsored, or administered by a government” as the majority notes. It is also home to a dispropor *107 tionately high percentage of African-Americans and other minorities in the nation’s cities. Williams is accurate in its general description of low-income public housing facilities as high-crime areas. From that premise, the opinion reasons that the legislative classification is reasonable — adopting, implicitly, the thoroughly-discredited theory that the nation’s drug problem can be solved by longer jail sentences for street peddlers and users. See, e.g., J.Am.B. Ass’n, Senior Judge Declines Drug Cases, June 1993, at 22 (Senior Judge Weinstein: “I simply cannot sentence another impoverished person whose destruction has no discernible effect on the drug trade.”)
Just as a “high-crime area” label cannot justify different prosecutorial tactics against citizens who happen to live there, see Lowder v. State, 589 So.2d 933 (Fla. 3d DCA 1991) (resident in low-income area carrying $1200 in cash is not presumptively a drug dealer), appeal dismissed, 598 So.2d 78 (Fla.1992), neither should the fact that the housing is government subsidized for the benefit of low-income persons justify a greater penalty for an offense committed by one who inhabits or visits the area than would be imposed on a resident or visitor to a wealthy community who committed the same offense.
In a June 16-18, 1993, “Drugs and Violence in America” symposium sponsored by the U.S. Sentencing Commission in Washington, D.C., enhanced sentences and mandatory minimum sentences were roundly condemned as solutions to the drug problem. More to the point, Joseph D. McNamara, a research fellow with the Hoover Institution, and former chief of police in San Jose, California, declared that the “drug war” has become a “race war” where African-Americans are arrested at 4-5 times the rate of whites, even though whites account for 80% of all illegal drug use. 53 Crim.L.Rep. (BNA) 1265, 1267 (June 23, 1993). By singling out African-Americans and other minorities for greater drug-offense sentences, simply because they are impoverished and therefore consigned to public housing, the statute makes an unreasonable classification. The enactment of laws which impose lengthier sentences for drug-related offenses in “frightened communities” has the effect of further institutionalizing discrimination in the sentencing process. See Samuel L. Myers, Jr., Racial Disparities In Sentencing: Can Sentencing Reforms Reduce Discrimination In Punishment?, 64 U.Col. L.Rev. 781 (1993); Robert Kuntz, The Kings or the Pawns, The Daily Bus.Rev., July 2, 1993, at A6 (statistics confirm that drug kingpin death penalty statute targets blacks).
For reasons of vagueness, if the phrase “public housing facility” is not further defined, or unreasonable classification, if the phrase is defined as commonly understood, section 893.13(l)(i) is unconstitutional. The adjudication for the illegal sale of a controlled substance can be affirmed. The enhancement provision, which denies eligibility for parole or gain-time because the transaction occurred near a public housing facility, is facially unconstitutional.

. The controlled substance sold by the juvenile to an undercover narcotics officer for $20.00 was cocaine, a substance made illegal by section 893.03(2)(a). Section 893.13(l)(i) provides:
Except as authorized by this chapter, it is unlawful for any person to sell, purchase, manufacture, or deliver, or to possess with the intent to sell, purchase, manufacture, or deliver, a controlled substance in, on, or within 200 feet of the real property comprising a public housing facility.... Any person who violates this paragraph with respect to:
1. A controlled substance named or described in [893.03(2)(a) ] commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083 or s. 775.084 and shall not be eligible for parole or release under the Control Release Authority pursuant to s. 947.-
146 or statutory gain-time under s. 944.275. Section 775.082 authorizes the imposition of a term of imprisonment not to exceed thirty years for a first-degree felony. Section 775.083 authorizes a fine of up to $10,000 in addition to imprisonment when the conviction is for a first-degree felony.

. The classification test, in constitutional law, asks whether a suspect class or fundamental right expressly or implicitly protected by the Constitution is implicated by the statute; if either is implicated a strict scrutiny test should be employed in evaluating the statute against an equal protection challenge. Pinillos v. Cedars of Lebanon Hosp. Corp., 403 So.2d 365 (Fla.1981).
The strict scrutiny standard that is afforded suspect classifications requires that the classification fit the goal invoked in its defense more closely than would any alternative nonsuspect classification. John Hart Ely, Democracy and Distrust: A Theory of Judicial Review 146 (1980). Racial minorities are a suspect class, Britt v. North Carolina, 404 U.S. 226, 240, 92 S.Ct. 431, 440, 30 L.Ed.2d 400 (1971), therefore, section 893.13(l)(i) is subject to rigid examination in the face of this constitutional challenge.
There is no empirical data submitted by the State showing that longer prison terms for poor blacks and other minorities is the fairest workable solution to the national problem of illegal drugs and the attendant violence.