690 So.2d 720 (1997)
Michael DEAN, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2788.
District Court of Appeal of Florida, Fourth District.
April 2, 1997.
*721 Michael D. Gelety, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
PARIENTE, Judge.
Appellant, Michael Dean (defendant), raises multiple errors in his trial that he argues mandate a reversal of his conviction for trafficking in cocaine. We agree that reversal for a new trial is mandated because of the improper admission of testimony by the arresting detectives regarding the general behavior patterns of drug traffickers.
Two plainclothes detectives, assigned to interdict the flow of narcotics in and out of Broward County, were on duty at the Fort Lauderdale Amtrack Rail Station. The detectives observed defendant sitting on a baggage cart and decided to "do a random encounter." The detectives identified themselves and asked if they could speak with him. They explained that there was a large drug problem in South Florida and that the detectives were randomly approaching individuals and, with permission, searching their luggage.
After explaining that compliance was voluntary, the detectives asked defendant for identification and consent to search his luggage. Defendant produced an Amtrack ticket in the name of "James Bolton," but indicated that he had no form of identification.
A large quantity of cocaine was discovered when the detectives searched defendant's luggage. After the detectives placed defendant under arrest, a subsequent inventory search revealed a driver's license bearing the name "Michael Dean." We previously addressed the propriety of the search of defendant's luggage, and defendant's voluntary consent, in State v. Dean, 639 So.2d 1009 (Fla. 4th DCA 1994), where we reversed the trial court's order suppressing the cocaine.

DRUG TRAFFICKER TESTIMONY
The defense at trial was that defendant was unaware of the cocaine in his luggage. In support of this defense, counsel pointed to defendant's voluntary consent to the search and the fact that he was not carrying a large quantity of money at the time of his arrest.
Over repeated objections from defense counsel, the prosecution elicited testimony from the detectives about their past experience with the general behavior of drug traffickers, including that: (1) people often consent to a search of their luggage, even when it contains contraband; (2) "mules" carrying contraband sometimes do not carry much money and generally are not paid until delivery; and (3) people traveling with a false name on their tickets generally are involved in illegal activity.
Defendant did not take the stand. The defense of lack of knowledge was thus developed on cross-examination. For example, on cross-examination of one of the detectives, defense counsel brought out that defendant had voluntarily consented to the search. On re-direct, over defense objection, the prosecution was allowed to elicit testimony about the detective's observations based on thousands of other random encounters:
PROSECUTOR: Deputy Green, how many of these random encounters have you done or did you do while you were with the domestic interdiction?
DEFENSE COUNSEL: Objection. Beyond the scope of cross and also irrelevant.
THE COURT: I don't think so.

*722 DET. GREEN: Thousands, you couldn't even count them all.

Q: Was it unusual during these random encounters that people consent to searches of their luggage?
A: Certainly did.
Q: Did you confiscate contraband from their luggage?
DEFENSE COUNSEL: Objection. Irrelevant. Collateral cases are not on trial.
THE COURT: Overruled. Go ahead.
A: Constantly all the time.
Q: Was it unusual, in your opinion, for somebody who had luggage containing contraband to consent to a search of their luggage?

DEFENSE COUNSEL: Same objection.
THE COURT: Overruled.
Q: Not at all, it's done on a daily basis.

(Emphasis supplied).
On the issue of the amount of money defendant was carrying at the time of his arrest, defense counsel elicited on cross-examination only that defendant did not have "a lot of money with him." However, on redirect, once again over the repeated objections of defense counsel, the prosecutor elicited testimony about the behavior of certain drug carriers known as "mules":
PROSECUTOR: [D]id you ever become familiar with the term mule?
DET. GREEN: Certainly have.
DEFENSE COUNSEL: Clearly beyond the scope of cross examination, also irrelevant.
THE COURT: Well, no, I don't think so. Go ahead.
Q: Can you tell the jury what in your training and experience what that term means?
A: Its an individual male or female who's paid by individuals ... to arrive in Florida from another location in the United States whether they drive or fly to Broward County and pick up a package ... to transport back to other states and who are paid to do so.
* * * * * *
Q: And did those individuals commonly have large amounts of money on them?

DEFENSE COUNSEL: Same objection, irrelevant.
THE COURT: Overruled.
A: Some did and some didn't have bus fare.

* * * * * *
Q: When would [the mules] receive whatever payment for actually transporting the contraband, would that be done before they made the trip, before they delivered or were they paid upon delivery?
DEFENSE COUNSEL: Object to relevance.
THE COURT: Overruled.
A: Most of them were paid upon delivery because of the fact they wanted to insure that the goods would arrive back up north.

(Emphasis supplied).
Finally, the prosecutor elicited testimony that the detective had encountered people traveling under assumed names "many times" and that, based on his personal knowledge and experience in "hundreds" of encounters, "[m]ore times than not they were involved in illegal activity."
During closing argument, the prosecutor emphasized the testimony concerning the general practices of drug dealers and mules:
[The detectives] indicated they have done this hundreds of thousands of times and during those times people have consented to the searches, knowing full well that their bags contained contraband.... The fact that he was traveling under an assumed name and you heard [the detective] indicate yes, he's coming [sic] across people traveling under in the course of his experience traveling under assume [sic] names. Generally it's not for any legitimate reason and you heard that in any of the reasons in this case no explanation.
This court has repeatedly condemned testimony about behavior patterns of criminals, including drug dealers, based upon an officer's observations in other cases. See, e.g., Thomas v. State, 673 So.2d 156 (Fla. 4th DCA 1996); Shelton v. State, 654 So.2d 1295 (Fla. 4th DCA 1995); Dawson v. State, 585 *723 So.2d 443 (Fla. 4th DCA 1991); Osario v. State, 526 So.2d 157 (Fla. 4th DCA 1988); Hargrove v. State, 431 So.2d 732 (Fla. 4th DCA 1983).
General criminal behavior testimony is not allowed as substantive proof of a defendant's guilt because "every defendant has the right to be tried based on the evidence against him, not on the characteristics or conduct of certain classes of criminals in general." Lowder v. State, 589 So.2d 933, 935 (Fla. 3d DCA 1991), dismissed, 598 So.2d 78 (Fla.1992). In Lowder, the court found reversible error where the detective was allowed to testify that "[p]eople who sell narcotics usually have cash in their pocket." Id.
In Thomas, the defendant claimed that he had abandoned his intent to sell cocaine and had simply stood by while another individual completed the transaction. This court reversed his conviction based upon impermissible testimony from the detective that often one individual is actually in possession of the drugs while another person collects the money.
In Shelton, the defendant sold a cocaine rock to an undercover officer for $20. On cross-examination of the officer, defense counsel brought out that the defendant did not have the $20 in his possession when he was arrested. 654 So.2d at 1296. On redirect, the officer was allowed to testify that money marked for identification was not always recovered and the lack of recovery would not be considered abnormal. Id. This court reversed, finding this testimony to be "inadmissible and highly prejudicial." Id.
In Hargrove, we condemned testimony of a police officer that based on his experience, the post-arrest statement that "I don't mess with the stuff" was a phrase uttered frequently by drug dealers to throw suspicion off themselves. 431 So.2d at 732. In condemning the testimony, this court found that "[t]he implications to be drawn from the exchange are obvious. They are equally irrelevant." Id. at 733.
We emphasize once again why the type of testimony allowed in this case is impermissible and highly prejudicial. Even if such testimony were marginally relevant, it would be substantially outweighed by the "danger of unfair prejudice." See § 90.403, Fla.Stat. (1995). The danger is that this type of testimony allows a jury to consider not only the facts relevant to that defendant's case but also events at other points in time unrelated to the defendant's conduct. The jury is asked to infer that because defendant's behavior was similar to the behavior of other drug dealers that the officer had previously arrested or observed, defendant must likewise be guilty. The only purpose of testimony regarding criminal behavior patterns "is to place prejudicial and misleading inferences in front of the jury." Nowitzke v. State, 572 So.2d 1346, 1356 (Fla.1990). The prejudicial effect is compounded because the defendant is deprived of any meaningful ability to cross-examine concerning the officer's prior experience to determine whether the other cases are in fact similar.
Testimony about other drug transactions is also condemned based upon the rule of "res inter alios acta" which
forbids the introduction against an accused of evidence of collateral facts which by their nature are incapable of affording any reasonable presumption or inference as to the principal matter in dispute, the reason being that such evidence would be to oppress the party affected, by compelling him to be prepared to rebut facts of which he would have no notice under the logical relevancy rule of evidence, as well as prejudicing the accused by drawing away the minds of the jurors from the point in issue.
Gillion v. State, 573 So.2d 810, 812 (Fla. 1991), (Barkett, J. specially concurring) (citing Watkins v. State, 121 Fla. 58, 61, 163 So. 292, 293 (1935)).
We disagree that defendant waived the drug traffickers issue below. Defense counsel's repeated objections as to relevancy, which were consistently overruled, preserved the issue for appellate review. We also disagree that defendant "opened the door," particularly with respect to the rebuttal testimony that most "mules" are paid on delivery. Defense counsel had simply asked on cross-examination about the amount of money that *724 defendant was carrying at the time of his arrest.
The testimony in this case about the behavior patterns of drug dealers was not isolated and substantially affected the defense. Therefore, we cannot state that the "patently prejudicial testimony was harmless." See Lowder, 589 So.2d at 936. Accordingly, we reverse for a new trial based on the erroneous admission of testimony concerning the behavior of drug dealers in general.
Because this case will be retried, we address two other points raised in this appeal.

PROSECUTOR'S COMMENTS ON DEFENDANT'S RIGHT TO REMAIN SILENT
Defendant contends that the prosecutor made several impermissible comments during closing argument that impinged on his constitutional right to remain silent. One particularly egregious comment referred to defendant's failure to explain at trial why he had been traveling under an assumed name and had told the detectives that he was not carrying any identification:
In addition to this, why travel under an assumed name. Why not tell the officer that you have identification. And don't these things all dial in together. Is there any other reasonable explanation. If there is you haven't heard it in this trial.

(Emphasis supplied).
It is axiomatic that "courts must prohibit all evidence or argument that is fairly susceptible of being interpreted by the jury as a comment on the right of silence." State v. Smith, 573 So.2d 306, 317 (Fla.1990). "Any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." State v. Marshall, 476 So.2d 150, 153 (Fla.1985).
In this case, the only person who could have testified at trial regarding the defendant's use of an assumed name while traveling and why he had not produced his driver's license as identification was defendant himself, and defendant did not testify. The prosecutor's comment"If there is you haven't heard it in this trial"referred directly to defendant's failure to explain his use of an assumed name and his failure to produce identification. The comment was thus fairly susceptible to interpretation by the jury as a comment on defendant's failure to testify.
The other comments objected to on appeal may also constitute impermissible comments. See Shelton; Sgroi v. State, 634 So.2d 280 (Fla. 4th DCA 1994); Marshall. We do not view these remarks merely as acceptable comments by the prosecutor on the uncontradicted or uncontroverted nature of the evidence during argument to the jury. See Barwick v. State, 660 So.2d 685 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); State v. Sheperd, 479 So.2d 106 (Fla.1985); White v. State, 377 So.2d 1149 (Fla.1979); Whitfield v. State, 479 So.2d 208 (Fla. 4th DCA 1985). Rather, they directly and collectively impinged on defendant's constitutional right to remain silent by impermissibly drawing attention to defendant's failure to testify.[1]
We remind counsel that comments on a defendant's failure to testify can be of "almost unlimited variety," and any remark which is "fairly susceptible" of being interpreted as a comment on silence creates a "high-risk" of error. Spry v. State 664 So.2d 41 (Fla. 4th DCA 1995) (citing State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)). In this case, we need not perform a harmless error analysis on the closing argument comments highlighting defendant's failure to testify because the testimony about the behavior patterns of drug dealers alone warrants reversal.

*725 PRELIMINARY INSTRUCTIONS ON REASONABLE DOUBT
Finally, we agree with defendant that the trial court entered dangerous territory by giving a concrete example in explaining the concept of reasonable doubt to prospective jurors.[2] The advice of our supreme court concerning preliminary instructions on reasonable doubt is particularly apt here:
While we can understand why trial judges might wish to acquaint the jury with the concept of reasonable doubt at an early stage in the proceeding, we strongly suggest that this be done only by reading in advance the approved standard jury instruction on the subject. Any extemporaneous explanation of sensitive legal issues that are already embraced within the standard jury instructions runs the risk of creating error.
State v. Wilson, 686 So.2d 569, 570 (Fla.1996) (emphasis supplied). Thus, on remand the trial court should resist adding to or modifying the standard instruction on reasonable doubt during preliminary instructions as well as during final jury instructions.
REVERSED AND REMANDED.
GLICKSTEIN and STEVENSON, JJ., concur.
NOTES
[1] We do note the existence of a tension between the condemned remarks in State v. Marshall, 476 So.2d 150 (Fla.1985), and those remarks found to be acceptable in White v. State, 377 So.2d 1149 (Fla.1979). This was previously pointed out by Judge Glickstein in his special concurrence in Crawford v. State, 473 So.2d 700 (Fla. 4th DCA 1985) (Glickstein, J., concurring), quashed on other grounds, 491 So.2d 1142 (Fla. 1986). Until White and Marshall are harmonized, prosecutors would do well to stay clear of any closing argument remarks that could be fairly susceptible to interpretation as a comment on defendant's constitutional right to remain silent.
[2] The trial court illustrated the concept of reasonable doubt during voir dire as follows:

[I]s it possible for you folks or for one of us to have entered the courtroom here by crawling down through the air conditioning crawl space? It looks large enough. You suppose that's a possibility, but is it really reasonable when you consider the fact that the Court room doors are unlocked and we can simply walk in? Do you think you understand the concept of reasonable doubt?