711 So.2d 1185 (1998)
Louis MOORE, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2005.
District Court of Appeal of Florida, Fourth District.
April 22, 1998.
Rehearing and Clarification Denied June 12, 1998.
Richard L. Jorandby, Public Defender, and Cherry Grant and Eric Gottlieb, Assistant Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Elaine L. Thompson, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Appellant, Louis Moore ("Defendant"), appeals his conviction for delivery of cocaine. Defendant argues that the trial court reversibly erred by allowing the State to improperly exercise a peremptory challenge against a black veniresperson. We affirm this issue, finding it to be without merit. Defendant also argues that the trial court erred by allowing the State to introduce evidence regarding "typical" drug sales as substantive proof of Defendant's guilt. On this issue, we reverse Defendant's conviction and remand for a new trial.
The following facts were developed at trial. One afternoon, Detective Kinsey, an undercover police officer, was flagged down in his unmarked car by a man, Johnnie Smith, who asked him what he wanted. Detective Kinsey replied that he wanted a "twenty," which he explained to the jury meant a twenty-dollar piece of crack cocaine. Smith told Detective Kinsey to follow him, which Detective Kinsey did. Detective Kinsey then saw Defendant standing near the corner of a house. Smith called Defendant over to him, and the two men stood about ten feet away from Detective Kinsey's car and made some sort of exchange. Detective Kinsey could not hear what Defendant and Smith were saying, and he could not see exactly what Defendant gave Smith, although it was a small object Detective Kinsey suspected to be crack cocaine. Smith then returned to Detective Kinsey's car, gave Detective Kinsey a rock of cocaine, and accepted Detective Kinsey's twenty dollars. Both Smith and Defendant were later arrested. The buy *1186 money was recovered from Smith's person, but neither cocaine nor buy money was found on Defendant.
Defendant's theory of defense was that he was not involved in the cocaine transaction, as evidenced by the fact that no money or cocaine was found on his person. The trial testimony of Smith, Defendant's only trial witness, supported Defendant's theory. Smith testified that immediately upon his arrest, he told the police that Defendant had nothing to do with the drug transaction.
To contrast, the State maintained that it was immaterial whether Defendant had the buy money or cocaine on his person when arrested or whether he was ever seen in possession of cocaine. Over defense counsel's objection, the State elicited testimony from Detective Kinsey regarding drug dealers' use of brokers, who are the persons who solicit the sale, bringing the buyer to the dealer:
Q: Now, can you please explain in approximately what part of your buy bust operation are there more than one individuals [sic] involved in the sale of crack cocaine?
A: I would say probably around half of the deals are more than one person.
Q: Now, can you please explain why, based upon your training and experience, often times more than one person is used to sell street level narcotics such as crack cocaine?
A: There is [sic] a few reasons. Sometimes what they do is utilize juveniles because the penalties are less for juveniles. They use them to recruit people.
[Defense]: Objection to relevance.
[State]: I'll link it up if you give me latitude.
The Court: Okay. Overruled.
A: Sometimes they use juveniles to recruit people from the main thoroughfares to where the dealer is actually at and they deliver the cocaine to him. Other times they employ somebodymaybe somebody that is addicted with the promise of maybe some money or a piece of crack cocaine if they bring some buyers to the dealer. We call them brokers. They broker the deal, bring somebody to the dealer and then the crack cocaine is sold at that point.
Q: Why are brokers often used?
[Defense]: Objection on the same grounds, your Honor.
The Court: Overruled.
A: Brokers are used often times because the dealer feels if they stand off in the background as opposed to coming up and handing the crack cocaine to an undercover officer, if they hand it to the broker and he hands it to the undercover officer, they feel they removed themselves from the crack cocaine deal.
The State also elicited testimony from Detective Kinsey regarding dialogue used in "typical" drug transactions:
Q: Now, the dialogue that you engaged in with Johnnie Smith, is that something you would characterize as very typical of the buy bust type of operations you generally engage in?
A: Very typical. Very common. It's usually a quick conversation. Basically them asking what do you need. You give the answer of a dime or a twenty and then the beginning of the transaction which would be follow me or____
Q: Is it very common for individuals in a buy bust type of situation to flag over vehicles to solicit them to purchase drugs?
[Defense]: Objection, your Honor, as to what is taking place here just isn't relevant.
The Court: Overruled.
A: Yes. That's very common. That's how we do operations and how the drug dealers recruit us over to their locations.
Moreover, the State elicited testimony from Detective Kinsey that drug dealers typically do not store drugs on the ground:
Q: I don't want to take things out of order, but in terms of crack cocaine, is it common for officers such as yourself and the street crimes unit to find crack cocaine lying around?
A: No, it's not.
Q: And could you explain to the members of the jury why you wouldn't find that lying around?

*1187 [Defense]: Objection as to relevance, your Honor.
The Court: Overruled.
A: The reason for that is: Crack cocaine is almost like money because it comes down the pipe line down to the street level dealer, which is where we come in contact with them. That crack cocaine, and we know this from interviewing people who are arrested, is fronted to them, given to them without their paying for it. In order for them to sell it to pay back the person selling it to them, a midlevel dealer will give the street dealer a ten, ten dollar piece of crack cocaine. He might cut it in half. Now, it's twenty. Now he could get a profit off that. He could pay back the midlevel dealer that gave it to him in the first place. For someone to leave crack cocaine laying around, it would be like leaving money. And knowing the guy will be looking for him, he hadn't received his money, and he will owe somebody else he got it from.
Q: And when you observed [Defendant] when you first came around the corner and you described to the members of the jury when he was over at the house, you said that he was standing by a fence. When you came upon him, did you see him bend in any way?
[Defense]: Objection, leading.
The Court: Overruled.
A: He was standing inside the fence near the house, in between the fence and the house, and, no, he was just standing upright.
On appeal, Defendant argues the trial court committed reversible error by allowing this testimony. We agree. Every defendant has the right to be tried based upon the evidence against him, not on the characteristics or conduct of certain classes of criminals in general. See Shelton v. State, 654 So.2d 1295, 1296 (Fla. 4th DCA 1995); Lowder v. State, 589 So.2d 933, 935 (Fla. 3d DCA 1991). Thus, where an undercover officer's testimony regarding procedures common to other drug sales is admitted as substantive proof of the defendant's guilt, reversible error results. See, e.g., Thomas v. State, 673 So.2d 156 (Fla. 4th DCA 1996); Hargrove v. State, 431 So.2d 732 (Fla. 4th DCA 1983). Here, the "typical drug sale" procedures about which Detective Kinsey testified were factually similar to the circumstances surrounding Defendant's arrest. As such, Detective Kinsey's highly prejudicial testimony impermissibly suggested to the jury that Defendant must have been involved in a drug transaction because he looked or acted like a person involved in a "typical" drug transaction. Because Detective Kinsey's experience with other drug sales should not have been permitted as substantive proof of Defendant's guilt, we reverse on this issue. See Thomas, 673 So.2d at 158.
We note that Detective Kinsey's testimony that drug dealers typically do not carry money or drugs in an attempt to insulate themselves from criminal liability would likewise be inadmissible as substantive proof of Defendant's guilt. See Dunning v. State, 695 So.2d 473 (Fla. 4th DCA 1997); Shelton, 654 So.2d at 1295. Here, however, the error was not preserved because Defendant failed to timely object during the improper line of questioning.
In sum, we reverse Defendant's conviction because the trial court improperly admitted highly prejudicial testimony of procedures common to drug transactions as substantive proof of Defendant's guilt. We affirm all other issues raised on appeal.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR A NEW TRIAL.
GUNTHER, FARMER and KLEIN, JJ., concur.