WARNER, C.J.
Appellant challenges his convictions for trafficking in cocaine on one date, and possession of cocaine and possession of drug paraphernalia on another date. He claims that he was entitled to a judgment of acquittal on the possession charges because the state never proved his constructive possession of the contraband. We agree and reverse. He also argues that the trial court erred in admitting evidence of general drug dealing behavior in connection with the possession charges which was prejudicial to both of his convictions. Because the evidence was irrelevant and highly prejudicial and the state argued that this evidence was relevant to prove both charges, we find that the error was not harmless and reverse for a new trial on the trafficking charge.
Two detectives arranged with a police informant to have the informant make a purchase of cocaine from appellant on July 16, 1998. The informant, wearing a wire recording device, arranged the sale with appellant. According to the informant, appellant told him that he would “cook it up.” The informant later returned to a residence where he was met outside by appellant. Several other people were standing around this residence. The informant and appellant went inside where appellant obtained some cocaine from a kitchen cabinet. He also had more cocaine in a bag in his hand. To complete the amount the informant agreed to purchase, appellant went outside and obtained a few more cocaine rocks. When the informant delivered the drugs to the officers, it tested positive for cocaine. The evidence of this transaction came from an informant who was performing substantial assistance, a fact that was the subject of cross-examination.
As a result of the foregoing events, the detectives obtained a search warrant for the residence which they sought to execute about seven days later on July 28, 1998. On that date, they conducted surveillance on the residence prior to executing it to determine whether appellant was there. Detective O’Hara testified that he noticed appellant enter and exit the residence on more than one occasion during the surveillance. Again, there were several other people outside the house. While watching the house, the detective noticed a male on a bicycle riding back and forth near the residence. Detective O’Hara testified that he suspected this person was conducting “counter-surveillance.” The man on the bike spoke with appellant and immediately thereafter started riding towards the two detectives. The biker then rode away.
The search warrant was executed while appellant was detained outside the residence. No drugs were found in the residence or on appellant. In a kitchen cabinet they discovered a Tupperware container with a razor on top, scales, zi-ploc baggies, and baking soda. Under the sink, they found a glass pot that contained cocaine residue. These items were the basis of the charges of possession of drugs and drug paraphernalia. No personal effects of appellant were found in the house. There was no evidence presented as to who owned or lived in the house.
At the close of the evidence, appellant moved for a judgment of acquittal on the possession counts, which the court denied. This was error, as the evidence taken in a light most favorable to the state did not prove that appellant was in constructive possession of the drugs or drug paraphernalia. In Dupree v. State, 705 So.2d 90, 94 (Fla. 4th DCA 1998), we set forth the necessary elements for proof of constructive possession:
*516 To establish constructive possession of a controlled substance, the state must show that the accused had dominion and control over the contraband, that he must have knowledge that the contraband was within his presence, and he must have knowledge of the illicit nature of the contraband. If the premises on which the contraband is found is in joint, rather than exclusive, possession of a defendant, knowledge of the presence of the contraband on the premises and the accused’s ability to maintain control over it will not be inferred, but must be established by independent proof. Such proof may consist either of evidence establishing that the accused had actual knowledge of the presence of the contraband, or of evidence of incriminating statements and circumstances, other than the mere location of the substance, from which a jury might lawfully infer knowledge by the accused of the presence of the contraband on the premises. Mere proximity to contraband is not sufficient to establish constructive possession.
(Citations omitted). In the instant case, the state never proved that appellant “possessed” the premises on the date of the search warrant. Appellant was not even in the residence at the time the warrant was executed. Appellant did not own the residence, rent it, or live there. The drug paraphernalia was not found in the open but in a cabinet and under the sink. Therefore, there was nothing to tie appellant to the contraband on the date of the search.
Instead, the state points to the transaction involving the residence a week before as evidence of appellant’s knowledge, dominion, and control of the paraphernalia. However, that does not prove constructive possession on the date of the second offense. There is no evidence that the glass pot, ziploc bags (a common item in any kitchen), baking soda (another common item), scales, and razor were present a week before. More importantly, as even the state suggested, many people were in and out of this house, any one of which could have had possession and use of these items. In fact, the state in its closing argument even admitted that the residence was a drug house where other people probably sold drugs. The prosecutor invited the jury to find appellant guilty on the possession charges simply because he could have been one of the many people cooking and selling the drugs. That is simply insufficient to prove appellant’s constructive possession. Appellant’s reasonable hypothesis of innocence, that the drug paraphernalia with the drug residue on it was not his, was not disproved, nor did the state offer evidence inconsistent with it. See State v. Law, 559 So.2d 187, 189 (Fla.1989). The judgment of acquittal should have been granted.
Appellant also challenges the admission of evidence of “counter-surveillance” on the date that the search warrant was executed. The detectives testified that this activity (counter-surveillance) is common when people are involved in criminal activity. As was said in Lowder v. State, 589 So.2d 933, 935 (Fla. 3d DCA 1991):
every defendant has the right to be tried based on the evidence against him, not on the characteristics or conduct of certain classes of criminals in general. Florida courts have frequently criticized the use of testimony from police officers regarding their experience with other criminals as substantive proof of a particular defendant’s guilt or innocence.
See also Avila v. State, 762 So.2d 934 (Fla. 4th DCA 2000); Shelton v. State, 654 So.2d 1295 (Fla. 4th DCA 1995). In the instant case, this testimony was offered to prove that criminal activity was taking place at the residence. It was irrelevant and highly prejudicial. See Lowder, 589 So.2d at 935. The court erred in admitting it.
Even though this testimony related to the activity that occurred during the execution of the search warrant on July 23rd, and we have reversed the possession
*517 convictions arising out of that transaction, we still deem that it was not harmless with respect to the trafficking conviction based upon the transaction on July 16th. It was always appellant’s defense that the informant was lying about buying the drugs from him on July 16th and that he could have bought the drugs from someone else in the house. In closing argument, the prosecutor used the “counter-surveillance” on July 23rd to prove appellant’s intent to sell on July 16th. The prosecutor said:
An unusual aspect of the case I thought was, which shows the true intent of Alvin Mounds on the 16th and 2Srd was you remember the testimony of Detective Polo and Detective O’Hara when they were conducting surveillance, there was a person on a bicycle who approached Alvin Mounds. Alvin Mounds and the person on the bicycle look in the direction of where the police are positioned to conduct a surveillance.
That person on the bike after talking to Alvin Mounds then rides in a very elongated version to get to the area where the police were. And what did Detective O’Hara tell you about that? That that’s classic counter surveillance. And who was the one person who was involved in directing that individual to look for the police? Mvin Mounds.
Because the prosecutor used the evidence of counter-surveillance as proof of intent on both occasions, we conclude that its introduction was not harmless error as to the trafficking conviction. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). We therefore reverse and remand for a new trial on that charge.
Reversed for entry of a judgment of acquittal on counts two and three and for a new trial on count one.
DELL and HAZOURI, JJ., concur.