884 So.2d 458 (2004)
Alexander ARMALIN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-1874.
District Court of Appeal of Florida, Fourth District.
October 6, 2004.
Carey Haughwout, Public Defender, and Richard B. Greene, Assistant Public Defender, West Palm Beach, for appellant.
*459 Charles J. Crist, Jr., Attorney General, Tallahassee, and Monique E. L'Italien, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
We affirm Alexander Armalin's conviction for delivery of cocaine. The evidence reflected that Armalin sold crack cocaine rocks to an undercover officer.
At trial, Officer Fromm testified that she had been trained in drug identification. Posing as a drug buyer, Officer Fromm pulled into a gas station and made contact with Armalin, who told her to pull into a parking area. After the officer told him that she "needed 40," Armalin took a little square, which Officer Fromm recognized as crack cocaine, out of his mouth. The officer gave Armalin $20 and asked him for another square. Armalin gave Officer Fromm another one and she paid him another $20.
Officer Jackson, who accompanied Officer Fromm, witnessed the transaction. He testified that Armalin took what appeared to be crack out of his mouth and sold it to Officer Fromm. At trial, the following exchange took place between Officer Jackson and the prosecutor:
STATE: And you said what appeared to be crack cocaine, how is it you believed it to be crack cocaine?
WITNESS: Just bycrack cocaine sold in South Florida is usually a small square, something like a square, with a yellowish, whitish, waxy substance. It appeared to be crack cocaine.
STATE: Continue.
WITNESS: He [Armalin] took it out of his mouth, gave it to Detective Fromm who was sitting in the driver's seat, he was on the driver's side of the vehicle, she gave him twenty dollars and asked if he had another piece. He retrieved another piece out of his mouth which is a common area for narcotic dealers to hold crack cocaine because they can ingest it if we come into contact with them.
STATE: You said he took it from his mouth and that's common. What do you base that on?
WITNESS: We see it every day. That's an easy way for them to hold it in their mouth because if they come into contact with us
MR. BENDER: Objection. This is irrelevant.
THE COURT: Overruled.
THE WITNESS: It's a common way if we make contact with a person who's holding all your illegal narcotics for them to ingest them and then we have no evidence against them.
STATE: That's based on your training and field experience?
WITNESS: Yes.
Armalin argues that the trial court abused its discretion in overruling defense counsel's relevancy objection to testimony concerning the behavior patterns of drug dealers.
This court has made it clear that testimony about a defendants general criminal behavior is not allowed as substantive proof of guilt, "because `every defendant has the right to be tried based on evidence against him, not on the characteristics or conduct of certain classes of criminals in general.' Lowder v. State, 589 So.2d 933, 935 (Fla. 3rd DCA 1991)." Dean v. State, 690 So.2d 720, 723 (Fla. 4th DCA 1997).
In Dean, we reversed based on the erroneous admission of testimony that it is common during drug transactions for one person to have possession of the drugs and hand them off to the buyer, while another person takes the money. Id. at 722. See also Thomas v. State, 673 So.2d 156, 158 *460 (Fla. 4th DCA 1996)(finding reversible error where the state elicited testimony from a detective that, in a drug transaction, often one individual is actually in possession of the drugs while another person collects the money to prevent robberies); Shelton v. State, 654 So.2d 1295, 1296 (Fla. 4th DCA 1995)(finding reversible error where an officer was allowed to testify that money marked for identification was not always recovered and that the lack of recovery would not be considered abnormal); Dunning v. State, 695 So.2d 473, 474 (Fla. 4th DCA 1997)(holding that the admission of detective's testimony concerning general customs of drug dealers, specifically that it was not uncommon for dealers to keep drugs off their persons, was error). We have recently re-affirmed this holding in Griffin v. State, 872 So.2d 998 (Fla. 4th DCA 2004).
In each of these cases, the general criminal behavior in question was a critical aspect of proof in relation to other evidence of guilt. Here, however, although inadmissible, the testimony is not prejudicial in the face of the evidence that the officer bought drugs from Armalin that were tested and found to be crack cocaine. Here, the testimony was not used to defeat a defense or establish an element of the crime. This is not a case where the state is seeking to explain why drugs or money was not located at the time of the arrest by reference to alleged habits of drug dealers. Here, the defense was essentially a challenge to the credibility of the officers. We conclude that admitting this testimony was harmless. Goodwin v. State, 751 So.2d 537 (Fla.1999).[1]
We find no reversible error or abuse of discretion as to the other issues raised. Therefore, the judgment and sentence are affirmed. See Dunning v. State, 695 So.2d 473 (Fla. 4th DCA 1997); Reyes v. State, 700 So.2d 458 (Fla. 4th DCA 1997); Baskin v. State, 732 So.2d 1179 (Fla. 1st DCA 1999).
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] Because we affirm on the basis of harmless error, we have not considered whether there may be an exception to the cited cases where relevant testimony is not used to convert otherwise innocent behavior to evidence of guilt, but, rather, to explain otherwise inexplicable behavior. In such instance, it might be argued that an analysis under section 90.403, Florida Statutes, is applicable to determine whether the probative value of testimony, otherwise relevant, is substantially outweighed by the danger of unfair prejudice.