# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-3653
LT Case No. 2021-CF-001221-A

_____

ERIC LAWRENCE,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Seminole County.
Melanie Chase, Judge.

Matthew J. Metz, Public Defender, and Brian Hyer, Assistant
Public Defender, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Roberts J.
Bradford, Jr., Assistant Attorney General, Daytona Beach, for
Appellee.


November 22, 2024


BOATWRIGHT, J.


Appellant, Eric Lawrence ("Lawrence"), challenges his
convictions for sale of cocaine, possession of cocaine, and unlawful
use of a two-way communications device following a jury trial, as

well as his resultant concurrent 20-month incarcerative sentences. He raises two arguments on appeal: 1) the lower court erred when it permitted one of the lead investigating officers to testify generally regarding his experience with unrelated drug transactions and drug dealers in order to speculate about the particulars of Lawrence's specific drug transaction; and 2) the court erred when it denied defense counsel's motion for judgment of acquittal based on the sufficiency of the evidence (in particular, that the State did not establish the controlled substance at issue was cocaine). We agree with Lawrence that the court erred by admitting the officer's generalized testimony regarding drug transactions, and we therefore reverse; but we decline to address the merits of his second issue on appeal, as it was not properly preserved below.

## I.

Lawrence was initially charged by information with one count of sale of cocaine. The information was amended to include additional counts for possession of cocaine and unlawful use of a two-way communications device. Lawrence pled not guilty to the charges and the case proceeded to a jury trial.

At trial, the State established that in May of 2021, Seminole City/County Investigative Bureau Agent Jonathan Jusino ("Jusino") received a tip suggesting Lawrence was selling cocaine and decided to orchestrate a controlled buy utilizing a confidential informant ("CI"). The CI being used had been arrested in 2021 for drug possession. When she participated in the instant drug transaction, she was working off her charges for that arrest by providing her source of drugs—Lawrence.

As is customary in a controlled buy, the CI made an outgoing phone call to Lawrence to arrange the sale. The CI placed the phone on speaker so Jusino could overhear the particulars of the conversation. Jusino heard the CI tell Lawrence that she wanted some "cocaine base" and that she had $60. Lawrence responded that he was willing to meet. The CI, through Jusino, gave Lawrence a planned location of a Dollar General in Sanford.

Jusino's partner agent, Deputy Michelle Lord ("Lord"), then searched the CI and her vehicle to make sure she did not already have any contraband or currency on her. The CI was then given $60.00 of U.S. currency, of which Jusino did not photograph or record the serial numbers. The officers then followed the CI to the Dollar General.  The officers set up across the street and had an unobstructed view of the transaction.

Within 30 minutes after the CI arrived at the Dollar General, Lawrence arrived. The CI then walked to the driver's side of Lawrence's vehicle. Jusino testified that he witnessed a quick passing of hands between Lawrence and the CI, and that in his experience this would have been when the exchange occurred. Lawrence then drove off in his vehicle. Following the exchange, Jusino met with the CI and retrieved the controlled substance from her. Other officers followed Lawrence, executed a traffic stop, and apprehended him. Jusino testified he visually identified the substance the CI had purchased as crack cocaine from his experience with controlled buys, and the substance field tested positive as crack cocaine. The officers were not, however, able to locate the $60.00 the CI gave Lawrence. Additionally, the officers did not see Lawrence throw any money out the window as they were stopping his vehicle.

Specific to the issues in this case, the CI testified that she gave Lawrence the money provided to her in exchange for drugs that Lawrence had in the console of his truck. She described the contraband as a "hard, white rock" that was in a baggie which she provided to law enforcement. The CI testified she personally observed Lawrence put the cash in the console of his truck.

The State called both Lord and Jusino as witnesses. Neither Lord nor Jusino were able to actually see any money given for drugs. They only saw a brief swiping of hands between the CI and Lawrence. This was specifically raised on cross-examination by Lawrence's counsel, who challenged the fact that Jusino was unable to affirmatively state he saw the cocaine leave Lawrence's hand and the money leave the CI's hand. He also challenged the thoroughness of the search of Lawrence's vehicle since no money was found. Lawrence's counsel further challenged the extent of Lord's search of the CI and her vehicle. Notably, Lord conceded

3

that her search of the CI was limited to a general pat-down but did not include a full body or strip search. She also did not thoroughly search any of her undergarments. In relation to this, Jusino admitted that CIs in the past had hid drugs on their persons that were not found during a pat down search.

The State, on re-direct, attempted to elicit from Justino his prior experience in viewing hand-to-hand drug transactions so as to show why the officers could not see the transfer of drugs and money between the CI and Lawrence. In essence, the State sought to show that these prior experiences from Jusino would establish that in this case, the money and drugs were actually transferred— even though no law enforcement officers personally saw the exchange and no money was found. Lawrence's counsel objected to this line of questioning, but the trial court overruled the objection.

The State then elicited that Jusino had witnessed over 50 hand-to-hand drug transactions. Jusino testified that based on these prior cases, the transaction in this case looked like a drug transaction (again, even though he could not see the money and drugs transferred). Justino explained that in the other drug transactions he had personally witnessed, there would customarily be a "swift hand motion back and forth," and the instant transaction involved similar hand motions. Thus, he deduced that based on his prior experience with other drug transactions, he could infer that the exchange actually occurred in this case.

The State also sought to rely on Jusino's experience with other transactions to explain why he could not find the money immediately after the sale had taken place. Over defense counsel's objection, the State was allowed to elicit that Justino had worked nearly 48 similar controlled buy cases in the past four years. He testified that, based on his prior experience, the money may not be found in cases like this because it is sometimes eaten or hidden in places in the vehicle where law enforcement could not find it. However, Justino could not specifically state that either of those two things happened in this case; and he conceded that in this case law enforcement did not search every area of the vehicle where money might be found.

After the close of the State's case, the case was submitted to the jury. Before reaching a verdict, the jury asked the following two questions: 1) "Was the CI's car searched after before/after the 'exchange'? Or was it only her person?"; and 2) "Did the CI get back in her vehicle before the officers made contact with her again?" The trial court did not provide any information to clarify the questions other than to state that the jurors should rely on the testimony and evidence presented.

The jury later returned a verdict of guilty on all counts. Lawrence was sentenced to serve 20 months in prison as to each count, and the sentences were all ordered to run concurrently. This appeal follows.

II.

Lawrence's first argument on appeal is that the court erred when it permitted Jusino to impermissibly bolster his own testimony with his general observations and experiences with drug dealers and drug transactions. The lower court's evidentiary ruling on the admissibility of Jusino's testimony is reviewed on appeal under an abuse of discretion standard, as limited by the rules of evidence. *See Kenner v. State*, 208 So. 3d 271, 276 (Fla. 5th DCA 2016) ("A trial court's ruling on the admission of evidence is reviewed by an appellate court under an abuse of discretion standard."); *see also Taylor v. State*, 146 So. 3d 113, 116 (Fla. 5th DCA 2014) ("[The lower court's evidentiary] discretion is limited, however, by the rules of evidence and the doctrine of stare decisis, and a court abuses its discretion when it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

Our appellate courts have repeatedly held that "a defendant has a right to be tried based on the evidence against him or her, not on the characteristics or general behavior of certain classes of criminals in general." *Baskin v. State*, 732 So. 2d 1179, 1180 (Fla. 1st DCA 1999). Florida courts have criticized the use of testimony from law enforcement officers regarding their experience with other criminals as substantive proof of a particular defendant's guilt or innocence. *Lowder v. State*, 589 So. 2d 933, 935 (Fla. 3d DCA 1991). In particular, our appellate courts have categorically

5

held that general criminal behavior testimony based upon an officer's experience with other cases is inadmissible as substantive proof of a defendant's guilt. *See Baskin*, 732 So. 2d at 1180; *Dean v. State*, 690 So. 2d 720, 723 (Fla. 4th DCA 1997).

The danger in allowing evidence of general behavior patterns is that it invites the jury to convict the defendant by association, rather than on the evidence. *Austin v. State*, 44 So. 3d 1260, 1262 (Fla. 1st DCA 2010). Such testimony asks a jury to infer that the defendant is guilty because his behavior was similar to the behavior of others who committed similar crimes. *White v. State*, 730 So. 2d 715, 716 (Fla. 4th DCA 1999). This type of testimony is generally relevant because it tends to prove guilt and would be admissible for example in a motion hearing on the issue of probable cause. *White v. State*, 971 So. 2d 972, 973 (Fla. 4th DCA 2008*); see also* § 90.401, Fla. Stat. (2021). However, in a jury trial, the relevance of general criminal behavior testimony "is substantially outweighed by the danger of unfair prejudice." *White*, 971 So. 2d at 972; § 90.403, Fla. Stat. (2021); *Dean*, 690 So. 2d at 723. This is because the jury is being asked to infer that, because the defendant's behavior was similar to the behavior of criminal offenders that an officer had previously arrested or observed, the defendant must likewise be guilty. *Austin*, 44 So. 3d at 1262. Therefore, the use of such evidence is reversible error because "[E]very defendant has the right to be tried based on the evidence against him, not on the characteristics or conduct of certain classes of criminals in general." *Id.* (quoting *Lowder*, 589 So. 2d at 935 (Fla. 3d DCA 1991)).

Regarding drug cases in particular, Florida courts have consistently held general criminal behavior testimony used to show that a defendant's conduct mirrored that of other drug sellers to be inadmissible. *See, e.g., Shelton v. State*, 654 So. 2d 1295 (Fla. 4th DCA 1995) (holding that in prosecution for sale of cocaine based on alleged sale of cocaine to undercover officer in exchange for marked bill, when the defendant was arrested within a minute of the sale and neither the bill nor any drugs were found, testimony of undercover officer that it was not unusual in drug cases not to recover drugs or money was highly prejudicial and inadmissible); *Smith v. State*, 152 So. 3d 1279 (Fla. 1st DCA 2015) (holding officer's affirmative response after being asked, "And in your years

6

of experience in narcotics work, is this what delivering drugs from one person to another typically looks like?," invaded province of jury by suggesting inference to be drawn from the facts by comparison to general patterns of criminal behavior rather than specific facts of the case, and was unfairly prejudicial against defendant); *Austin*, 44 So. 3d at 1262–63 (ruling in prosecution for trafficking in cocaine that officer's explanation that drug traffickers often use third-party car rentals plainly and impermissibly suggested to the jury that defendant, who used a third-party car rental, was a drug trafficker, and such inference was prejudicial and misleading); *Lowder,* 589 So. 2d at 935 (holding in drug possession trial, the fact that police officer knew that the arrest scene was a reputed narcotics area did not prove defendant was involved in a drug transaction and was "patently prejudicial").

In this case, Jusino's testimony regarding his experience with other drug transactions was specifically introduced to compensate for the fact that no law enforcement witnesses personally observed the cocaine and money exchange hands. In addition, his testimony regarding his prior transactions was used to explain why the currency that was provided to the CI was not later found on Lawrence. This testimony thus falls squarely within the ambit of the above-referenced case law, because it provided substantive proof of Lawrence's guilt based on Jusino's experience in prior cases and not the specific facts of this case. Jusino's testimony regarding his experience in prior cases was used to explain holes in the State's evidence to make the case appear more credible to the jury.

The State asks us to find this testimony is simply harmless error. However, we do not find that the State can "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *Goodwin v. State*, 751 So. 2d 537, 541 (Fla. 1999) (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986)). This is a case of witness bolstering that should not have been allowed. Absent Jusino's testimony, the jury would have been required to determine whether the drug exchange actually occurred based only on the CI's eyewitness testimony and its assessment of her credibility.

The effect of his testimony was to bolster the credibility of the CI's account of the exchange. This went to the heart of Lawrence's defense, or theory of the case, which was that there was no drug transaction and he was framed by the CI. In this regard, there were issues raised as to the strength of the State's case regarding the reliability of the CI, including the initial search of the CI, whether the money and drugs were actually exchanged between Lawrence and the CI, and the lack of money found on Lawrence. Obviously, the jurors were concerned about the CI's reliability, given that they specifically inquired about the thoroughness of the searches on her. It is evident that Jusino's testimony was used by the State to effectively state, 'if you don't believe the CI, believe Jusino because he has seen 50 of these types of transactions and knows what criminal behavior looks like.' This is exactly the type of testimony that our appellate courts have deemed unduly prejudicial, and we cannot say beyond a reasonable doubt, based on the facts of this case, that Jusino's testimony did not contribute to the jury verdict. Lawrence's conviction should consequently be reversed on the basis that Jusino was permitted to extensively rebut Lawrence's defense exclusively based on his testimony regarding observations from other drug transactions.

### III.

We reverse Lawrence's convictions. The trial court erred in allowing the State to improperly bolster the credibility of the officer's observations through the testimony about what usually happens in other controlled buys, and we cannot find the error harmless beyond a reasonable doubt. Accordingly, we reverse and remand for a new trial.

REVERSED and REMANDED.

WALLIS and JAY, JJ., concur.

8

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---