LEWIS, J.
Gerald Petion seeks review of the decision of the Fourth District Court of Appeal in Petion v. State, 4 So.3d 83 (Fla. 4th DCA 2009), asserting that it expressly and directly conflicts with the decision of the Third District Court of Appeal in J.D. v. State, 553 So.2d 1317 (Fla. 3d DCA 1989), with regard to the correct standard of review for an error in the admission of evidence during a non-jury trial. We exercise our jurisdiction to resolve this conflict, see art. V, § 3(b)(3), Fla. Const., and hold that during a non-jury trial, a judge is presumed to have disregarded inadmissible evidence, but that a trial court’s express and specific finding of admissibility on the record can rebut that presumption. Accordingly, we quash the decision below and remand for further proceedings consistent with this opinion. In addition, we disapprove the decisions discussed in this opinion to the extent that they hold a presumption of disregard applies when a trial court during a bench trial admits evidence over objection and does not expressly state on the record that this evidence did not contribute to the final judgment or determination. Lastly, we disapprove J.D. to the extent it holds that there is no presumption that a trial court disregards exposure to inadmissible or improper evidence during a bench trial.
FACTS AND PROCEDURAL HISTORY
The facts from the decision below establish that following a non-jury trial, Gerald *728 Petion was convicted of possession of cocaine with intent to sell, possession of cannabis -with intent to sell, and unlawful use of a false name. During a suppression hearing, a law enforcement officer testified that he had obtained information from a local resident that a driver of a white Toyota Camry had asked the resident whether he was “straight or looking to party,” and handed the resident a piece of paper which contained a phone number and was inscribed with the initials “GP.” During the bench trial, two law enforcement officers testified that a few days after the tip, they conducted a traffic stop of a white Toyota Camry matching the description provided by the resident. The vehicle was driven by Gerald Petion and carried several passengers.
The officers requested identification from Petion, and Petion produced a driver’s license that was not his own. Petion was arrested for providing false identification to a law enforcement officer, and he was searched. During the search of Petion, the officers discovered crack cocaine and twenty-six bags of powder cocaine. A search of the vehicle revealed twelve bags of marijuana, a number of clear plastic bags, and slips of paper inscribed with the initials “GP” and a phone number.
In addressing these facts, one of the officers was allowed to testify over defense objection that it was common for street-level narcotics dealers to distribute drug-related contact references on slips of paper similar to those recovered from the vehicle. The testimony disclosed:
[STATE]: Okay. Did you at any point later see pieces of the paper with the initials “GP” on it?
[OFFICER]: Yes, ma’am.
[STATE]: Where did you see those pieces of paper?
[OFFICER]: I believe there was a cup in the center console of the vehicle that had quite a few of those pieces of paper in the vehicle.
[STATE]: What did the pieces of paper say on them?
[OFFICER]: They all said the same thing. They said the initials “GP” with a telephone number.
[STATE]: Okay. Have you ever seen— based on your training and experience, have you ever seen anything like this before?
[DEFENSE]: Objection. Now we’re being really speculative. Pieces of paper with initials and a telephone number, and now he’s going to speculate what they are used for?
THE COURT: Based on his training and experience? Overruled.
[OFFICER]: It’s common for street level narcotics dealers to hand out contact reference for potential buyers to contact them, and that’s consistent with that.
The trial court found Petion guilty of the lesser included offense of possession of cocaine with intent to sell, possession of cannabis with intent to sell, and unlawful use of a false name. Petion was sentenced to concurrent terms of forty-six months imprisonment on the first two convictions and to time served on-the last. On appeal to the Fourth District, Petion contended that the trial court abused its discretion by permitting a police officer to testify that it was common for drug dealers to provide contact information to potential buyers. See Petion, 4 So.3d at 85.[1] Petion assert *729 ed that testimony from a police officer concerning generalized common practices among drug dealers is inadmissible as substantive proof of a particular defendant’s guilt. See id. at 87. The district court agreed that the testimony was inadmissible, but reasoned that any error by the trial court in admitting the testimony was harmless because the trial court was presumed to have disregarded any inadmissible evidence. The district court stated:
We find, however, that any error in admitting this testimony was harmless in this case, which was tried without a jury. When a trial judge, sitting as the trier of fact, erroneously admits evidence, the judge is 'presumed to have disregarded that evidence. See C.W. v. State, 793 So.2d 74 (Fla. 4th DCA 2001). Although this presumption is rebuttable, nothing in the record suggests that the trial judge relied upon this inadmissible evidence.
Id. (emphasis supplied). Accordingly, the Fourth District affirmed Petion’s conviction for possession of cocaine with intent to sell.
Thereafter, Petion sought discretionary review in this Court based on conflict with J.D. v. State, 558 So.2d 1317 (Fla. 3d DCA 1989). In J.D., two officers arrested the appellant, whom they believed to be the driver of a vehicle which they had been pursuing. See id. at 1318. During the bench trial, an officer testified that after J.D. was arrested and read his Miranda[2] rights, he refused to respond to questions. See id. J.D. objected and moved for a mistrial, asserting that the officer’s statement was an impermissible comment on J.D.’s post-arrest silence. See id. The trial court denied the motion for mistrial but did not provide an express ruling on the objection. See id. The trial court adjudicated J.D. delinquent, and J.D. appealed the adjudication to the Third District. See id.
The Third District held that the trial court’s failure to respond to the objection implicitly overruled the objection and, therefore, the trial judge had considered the offending comment in reaching the judgment. See id. The district court applied a harmless error analysis but expressly declined to apply the presumption utilized in Petion. The court reasoned:
We understand the State’s position to be that, inasmuch as the trial which we review here was a non-jury trial, the trial judge certainly knew to disregard the comment and, accordingly, we can rest assured that he has done so. The standard which the State urges would, then, be nothing more than one which requires this court’s subjective interpretation of what the trial judge did or did not consider, inasmuch as the record presented for review is silent on this point. We respectfully decline the State’s invitation, and prefer, as indicated above, instead to hold to an objective interpretation of the evidence presented in the record on review. When the record is examined in this light, two facts are clear: first, the quoted comment was, in fact, made; and, second, this court cannot find beyond a reasonable doubt from the record, as [State v.] DiGuilio[, 491 So.2d 1129 (Fla.1986),] requires, that the error complained of did not contribute to the adjudication of delinquency.
*730 Id. at 1319. The Third District reversed the adjudication and remanded for a new trial. See id.
Based on the conflicting standards of review expressed in these decisions, this Court accepted review to resolve the conflict between Petion and J.D.[3]
ANALYSIS
The initial presumption that a trial court has disregarded inadmissible evidence during a non-jury trial is well established in Florida. In a non-jury trial, the factual findings of the judge are entitled to the weight of a jury verdict. See, e.g., Spataro v. State, 179 So.2d 873, 876 (Fla. 2d DCA 1965). However, unlike a jury, it is generally understood that a trial judge acting as both the trier of fact and arbiter of the law “is trained by learning and experience to segregate evidence” that is inadmissible and improperly prejudicial from evidence that is admissible, reliable, and relevant to the issue. M.A. v. State, 384 So.2d 740, 742 (Fla. 2d DCA 1980) (quoting United States ex rel. Placek v. Illinois, 546 F.2d 1298, 1304 (7th Cir.1976)). From that principle, the appellate courts of Florida have derived the rebutta-ble presumption that in non-jury cases, trial judges base their decisions upon admissible evidence and have disregarded inadmissible evidence. See id. (citing United States v. Masri, 547 F.2d 932 (5th Cir.1977) (applying Florida law); see also Jalbert v. State, 95 So.2d 589 (Fla.1957)). Accordingly, if a trial judge receives evidence as the finder of fact and hears inadmissible evidence, such as through a suppression hearing, a proffer, a motion in limine, or prior to sustaining an objection to the evidence, the judge is generally presumed to have disregarded the improper evidence. Therefore, any error in the trial judge’s exposure to this improper evidence is deemed harmless. In addition, a trial court may initially rule that evidence is admissible but later conclude that such evidence should not be considered. The presumption is therefore necessary given the dual nature of a trial court judge simultaneously functioning as an arbiter of the law and trier of fact, which causes the trial court at times to consider evidence that would be inadmissible before a jury. See United States v. Greathouse, 484 F.2d 805, 807 (7th Cir.1973). However, this presumption can be rebutted through a trial court’s express and specific finding of admissibility on the record or a statement on the record which discloses that the trial judge has actually relied upon the erroneous evidence to support the verdict or result. See Parks v. Zitnik, 453 So.2d 434, 437 (Fla. 2d DCA 1984).
To understand the application of this presumption, it is instructive to trace the evolution of the standard of review with regard to claims of evidentiary errors during a bench trial. This standard is derived from the deference given to the ability of a trial judge to segregate inadmissible evidence. In Harris v. Rivera, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981), the United States Supreme Court recognized that the presumption of judicial regularity is fundamental to bench trials. “In bench trials, judges routinely hear inadmissible *731 evidence that they are presumed to ignore when making decisions.” Id. at 346, 102 S.Ct. 460 (emphasis supplied) (holding that apparent inconsistency in a trial judge’s verdict did not give rise to an inference of irregularity in his finding of guilt that was sufficiently strong to overcome the well-established presumption that the judge adhered to basic rules of procedure); see also Sinclair v. United States, 279 U.S. 749, 767, 49 S.Ct. 471, 73 L.Ed. 938 (1929) (“[Wjhere the court decides the fact and the law without the intervention of a jury, the admission of illegal testimony, even if material, is not of itself a ground for reversing the judgment.... If evidence appears to have been improperly admitted, the appellate court will reject it, and proceed to decide the case as if it was not in the record.” (quoting United States v. King, 48 U.S. 833, 854, 7 How. 833, 12 L.Ed. 934 (1849))). However, as this is principally a state law issue, it is necessary to analyze decisions from Florida courts.
Beginning with the precedent of this Court, the decision in Prince v. Aucilla River Naval Stores Co., 103 Fla. 605, 137 So. 886 (1931), established the deference an appellate court should afford a trial judge’s ability to segregate inadmissible evidence from consideration in the case. This Court stated:
Errors as to the admission and rejection of evidence have not been shown to have injuriously affected the rights of the complaining party, especially since the case was not tried before a jury, where irrelevant or immaterial testimony may sometimes be highly prejudicial to a fair consideration of the facts by untrained minds of jurors who might thereby be misled into rendering a verdict on testimony which should have little or no consideration as of evidentiary value.
Id. at 886 (emphasis supplied). The Prince decision recognized that trial court judges are deemed to have the training to disregard and not be improperly prejudiced by inadmissible evidence.
More than twenty years later, this Court again considered alleged errors in the admission of certain evidence and held that “in cases tried by the Judge without a jury the Judge is in a position to evaluate the testimony and discard that which is improper or which has little or no evidentiary value.” First Atlantic Nat’l Bank of Daytona Beach v. Cobbett, 82 So.2d 870, 871 (Fla.1955); see also Adan v. State, 453 So.2d 1195, 1197 n. 1 (Fla. 3d DCA 1984) (citing this principle to review whether a trial court erred in not granting a mistrial after a state witness testified that the defendant was in custody for an unrelated charge of burglary when he was questioned by an officer concerning a murder). This Court examined the record in First Atlantic and concluded that the trial judge properly evaluated the testimony and that the objectionable evidence did not “injuriously or harmfully affect[ ] appellant when considered and evaluated by an experienced trial Judge.” 82 So.2d at 872; see also Perez v. State, 452 So.2d 107, 107 (Fla. 3d DCA 1984) (applying First Atlantic to determine that technical error in admitting hearsay testimony was harmless).
Subsequently, in Jalbert v. State, 95 So.2d 589 (Fla.1957), this Court reviewed a trial court’s admission of an accomplice’s uncorroborated testimony and restated the principles established in Prince and First Atlantic as a rebuttable presumption: “This Court will ‘presume the trial judge properly considered the accomplice’s testimony with due caution, since the trial judge is presumed to have committed no error and that presumption has not been overcome by the defendant.” Id. at 591 (emphasis supplied). Thus, by 1957, the *732 presumption utilized in Petion was expressly recognized and applied by this Court.
Two decades later, in Alford v. State, 355 So.2d 108 (Fla.1977), this Court identified and gave deference to a trial court’s ability to filter the evidence considered for a decision.
In considering the imposition of the sentence, the trial judge’s discretion is guided and channeled by statute and case law. He may be “aware” of other factors, but he does not “consider” these factors in the exercise of his discretion. For example, the judge may be “aware” of inadmissible evidence after a proffer has been made, but this evidence is never “considered” by the judge.
Id. at 109. More recently, in Guzman v. State, 868 So.2d 498 (Fla.2003), this Court relied on First Atlantic and the Third District’s decision in State v. Arroyo, 422 So.2d 50 (Fla. 3d DCA 1982), to hold that a claim of prosecutorial misconduct failed where the trial court excluded certain inadmissible evidence. The Court articulated the rule that in a non-jury trial, “the judge as finder of fact is presumed to have disregarded any inadmissible evidence or improper argument” and “[e]ven where a judge erroneously admits improper evidence, the judge as factfinder is presumed to disregard it.” Guzman, 868 So.2d at 510-11. The Guzman Court applied the presumption and held as follows:
Here, the judge did not err, but appropriately excluded inadmissible evidence. Given these evidentiary rulings, the judge a fortiori may be presumed to have disregarded the inadmissible evidence. Therefore, assuming arguendo that the prosecutor’s attempts to introduce the evidence were improper, the attempts were harmless.
Id. at 511 (emphasis supplied). Guzman is distinguishable from Petion in that the trial court excluded, rather than expressly admitted, inadmissible and improper evidence. It is logical to presume that the trial court’s exposure to evidence that the court recognized as inadmissible would not be considered by the court in rendering its determination. In contrast, under the circumstances in Petion, it is'illogical to presume the court disregarded evidence when the court has expressly ruled it admissible and properly before the court for consideration.
A review of district court decisions also demonstrates application of the presumption. A decade after Jalbert expressly recognized the presumption, the Third District echoed the principle stated in First Atlantic without referring to any decisions of this Court on the issue. In Adjmi v. State, 208 So.2d 859 (Fla. 3d DCA 1968), the district court held that the trial court did not commit error in failing to grant the defendant’s motion for a direct verdict because
[i]n a trial before a court, without a jury, as here, the law is well-settled; the credibility of witnesses and the weight of their testimony are questions for the determination of the judge, whose function it is to draw all reasonable deductions from the evidence. In such cases, the judge is in a position to evaluate the testimony and discard that which is improper or which has little or no evi-dentiary value.
Id. at 860 (emphasis supplied).
Several other decisions have emphasized that the standard of review is necessarily different when reviewing a judgment entered in a non-jury trial. In Brown v. State, 223 So.2d 337 (Fla. 3d DCA 1969), the Third District again expressed the principle espoused in Prince that the trial court is deemed to have the training and discipline to not be prejudiced by inadmissible evidence. Analyzing the impact of *733 the United States Supreme Court decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Third District declined to reverse the trial court because the Bruton issue occurred during a bench trial. The district court based its holding on the divergent factors between a bench trial and a jury trial.
Fear has often been acknowledged that a lay jury is susceptible and amenable to ignoring established constitutional principles involving admissibility of confessions and exculpatory remarks. And it is a well established principle that a trial judge, sitting alone, and therefore in the capacity as trier of fact, will be less likely to be prejudicially influenced by this type of evidence than would be the untrained minds of the jurors. Finally, we take judicial notice of the fact that any confession or exculpatory statements, tendered by the state for admission into evidence, must be first reviewed, and then evaluated for admissibility by the trial judge. This necessarily involves the judge’s viewing every tendered piece of evidence before making an initial decision as to its constitutionality. When such evidence is rejected by a trial judge, he is deemed to have the training, experience, and discipline of faculties so as to avoid being influenced by any prejudicial effects therefrom.... To reverse this trial on the basis that the trial judge, in his capacity as trier of fact, was so prejudicially influenced by his encounter with the incriminating portions of the [co-defendants’] confessions] ..., would be to cast aspersions on the entire foundation of the judge’s role in any court proceeding.
Brown, 223 So.2d at 339 (emphasis supplied) (citations omitted); see also Leeb v. Read, 190 So.2d 830, 832-33 (Fla. 3d DCA 1966) (applying the Prince principle to hold that evidentiary errors made during a bench trial did not affect the substantial rights of the complaining party). Brown stands in opposition to the position of Petion that a uniform standard of review should be applied to preserved errors. As the Third District noted, it is necessary for a trial court judge, sitting as both the trier of fact and arbiter of law, to consider the evidence before ruling on its admissibility. Hence, the presumption defers to the trial court’s trained discretion to disregard prejudicial or improper evidence.
Thereafter, in Belcher Towing Co. v. Board of County Commissioners of Dade County, 233 So.2d 456 (Fla. 3d DCA 1970), the Third District reiterated the distinction between a jury trial and a bench trial:
We hold that under the circumstances of this case, where the cause was tried before the court without a jury and the court’s finding of fact and decision were in no way based upon the opinion in the prior case, that prejudicial error has not been shown. A more informal trial is permissible before a court than before a jury. The admission of the opinion which the court expressly ruled had no effect as res judicata or estoppel by judgment was not prejudicial error.
Id. at 457 (emphasis supplied) (citations omitted).
In the months following this Court’s decision in Alford, the Fourth District also acknowledged that the reviewing standard should be different for a judgment arising from a jury trial versus a non-jury trial. See In re M.E.G., 353 So.2d 594, 595 (Fla. 4th DCA 1977). In M.E.G., the Fourth District explained that
[a] judge is in a position to weigh testimony, assess credibility and resolve conflicts, just like a jury, when he sits as a trier of the facts.... He also decides what testimony is' to be excluded as being violative of some evidentiary rule. *734 He sits in the unique position of admitting and excluding testimony and then weighing what he admits and disregarding what he excluded. In the recent case of Alford v. State, 355 So.2d 108 (Fla.1977), ... it was recognized that a trial judge may be made aware of facts bearing on sentencing issues but that he was capable of disregarding the known facts in reaching his decision. Therefore, extending Alford to this case, we feel the trial judge is able to disregard the improper testimony in making his decision, thereby rendering the “error” harmless.
353 So.2d at 595.
In these decisions, the district courts did not expressly state that they were a applying a “presumption,” despite the holding in Jalbert. However, it is clear that the courts were relying on the fundamental principles underlying the presumption (i.e., deference to the trial court’s training and discipline to segregate inadmissible evidence). A few years after the decision in M.E.G., the Second District Court of Appeal in M.A. v. State, 384 So.2d 740, 742 (Fla. 2d DCA 1980), expressly stated that “the courts of Florida presume that, in nonjury cases, trial judges base their verdicts on admissible evidence and disregard inadmissible evidence.”
This presumption is rebutted where the record demonstrates that the trial court relied upon or expressly admitted the erroneous evidence over objection. Specifically, the Third District in State v. Arroyo, 422 So.2d 50 (Fla. 3d DCA 1982), summarized the precedent concerning this issue, as follows:
Ordinarily, where a trial judge, sitting, as here, as the fact-finder, erroneously admits evidence, he is presumed to have disregarded the improperly admitted evidence, and the error of its admission is deemed harmless. Wythers v. State, 348 So.2d 390 (Fla. 3d DCA 1977); Capitoli v. State, 175 So.2d 210 (Fla. 2d DCA 1965). Where, however, the record discloses that the trial judge relied upon the erroneous evidence, this presumption is overcome.
Arroyo, 422 So.2d at 51 (emphasis supplied) (federal citations omitted). After articulating this standard of review, the Third District determined that the presumption was rebutted because it was “abundantly clear” that the inadmissible evidence “played a significant part in the trial judge’s ruling” on the motion to suppress. Id. Considering the trial court’s comments during the suppression hearing and the express statements in the written order granting the motion to suppress, the district court concluded that these comments indicated that while the results of the inadmissible experiment may not have been the “sine qua non of his decision,” the trial court’s “reliance on the experiment to impeach the officers’ testimony [was] inseparable from his various conclusions” in support of granting the motion to suppress. Id. at 52; see also C.W. v. State, 793 So.2d 74, 74-75 (Fla. 4th DCA 2001) (applying standard from Arroyo to hold that trial court was presumed to disregard hearsay statements in a probable cause affidavit where the record did not establish that the judge relied on the affidavit in any way and the trial judge stated that his decision would be based solely on the evidence presented). Thus, Arroyo is an example of how the presumption can be rebutted in that the district court examined the record to determine that the trial court relied on the improperly admitted evidence. See also S.N. v. State, 563 So.2d 202 (Fla. 3d DCA 1990) (granting a new adjudicatory hearing because the record revealed that the trial court expressly relied upon the juvenile’s post-arrest silence in disregarding the juvenile’s evidence and *735 in determining that the juvenile was a delinquent).
However, we note that Arroyo frames the presumption in overly broad terms. The appellate court should not presume that the trial court disregarded all improperly admitted evidence where the record reflects that the evidence was admitted over objection. Hence, another method of rebutting the presumption is through a trial court’s express admission of the evidence over objection. In making the determination that the evidence is admissible, we would expect a trial court judge to believe that the evidence was properly before the trier of fact for consideration. It would be nonsensical to hold otherwise and insulting to the training and experience of the trial judge to presume that the evidence was disregarded when the court made a conscientious ruling that the evidence was admissible. In that circumstance, the trial court must make an express statement on the record that the erroneously admitted evidence did not contribute to the final determination. Otherwise, the appellate court cannot presume that the trial court disregarded evidence which was specifically admitted as proper.
The Second District correctly expressed the proper application of the presumption under circumstances where a trial court admits evidence over objection. In Parks v. Zitnik, 453 So.2d 434 (Fla. 2d DCA 1984), the district court stated that the trial court erred in allowing questioning with regard to the specifics of the appellant’s criminal history.
The appellee contends that any error committed by the trial court was harmless because the case was tried by the court rather than by a jury. Since the parties did not request a jury trial, the trial judge had to determine the credibility of the parties. Jalbert v. State, 95 So.2d 589 (Fla.1957). Due to the nature of this case, the credibility of the parties was crucial and therefore we cannot hold the error was harmless. Had the trial judge stated that he based his findings only upon certain evidence and that he disregarded the challenged evidence, the error, if any, in the admission of such evidence could have been determined harmless. Capitoli v. State, 175 So.2d 210 (Fla. 2d DCA 1965).
Where the proof of guilt is so convincing that a person would clearly have been found guilty even without collateral evidence introduced in violation of the evidence code, the violation of the code may be considered harmless. In the case sub judice, however, because of the importance of the credibility of the witnesses under the particular facts of this case, we cannot say the evidence in favor of the appellee was so clear and convincing that introduction of the challenged evidence was harmless. A trial judge is presumed to rest his judgment cm admissible evidence and to disregard inadmissible evidence, United States v. Masri, 547 F.2d 932 (5th Cir.1977), but in view of the specific findings of admissibility in this case, we cannot hold the trial court disregarded inadmissible evidence.
Parks, 453 So.2d at 437 (emphasis supplied). This decision demonstrates an example of the type of statement in the record that would rebut the presumption, in that the district court utilized the trial court’s specific finding of admissibility as a basis to rebut the presumption. This is analogous to the situation in Petion, where the trial court overruled the objection to the officer’s testimony. Here, the record establishes that the trial court determined the officer’s testimony with regard to the common practices of street-level narcotics dealers was admissible based on the officer’s “training and experience.” Thus, the *736 record in Petion reflects that the trial court considered the evidence to be properly admitted. Therefore, the district court erroneously concluded that the presumption was not overcome.
It is logical and practical that the presumption must be overcome where a trial court judge admits evidence over objection, because the judge would understandably believe that the evidence is properly before the court for consideration. For instance, in Liebeman v. Department of Professional Regulation, 573 So.2d 849 (Fla. 5th DCA 1990), the district court disregarded the hearing officer’s express statement that she would not rely on the testimony concerning proffered lie detector results.
[Wjhile ultimately the hearing officer indicated she would not rely on the polygraph testimony, she first invited its introduction and then refused to strike it. These mixed signals on a cold record before us, together with what we perceive to be an innate inability of the human mind to obliterate what it has heard and the fact that the findings against the doctor were totally dependent upon the hearing officer’s assessment of the witnesses’ credibility, require us to conclude that the error was not harmless.
Id. at 352. A trial court judge certainly possesses innately human characteristics, similar to any juror, which may include the inability to “obliterate what it has heard.” Id. Moreover, if a trial court judge expressly admits evidence over objection, it is reasonable to assume that the judge considers this evidence admissible and available for consideration. Accordingly, we must quash the decision below and remand for reconsideration under the correct standard of review, as articulated in this decision and as applied in Parks.
Following Arroyo, the Third District decided the conflict case J.D., which declined to adopt the presumption and did not refer to Arroyo. Petion asserts that J.D. implicitly overruled Arroyo and the other prior decisions of the Third District on this issue. However, in Daniels v. State, 634 So.2d 187 (Fla. 3d DCA 1994), which was decided after J.D., the Third District again applied the presumption. In Daniels, the Court established that an express statement on the record from the trial court that the evidence was disregarded further supports a determination that the presumption was not rebutted.
The rule, as reiterated in State v. Arroyo, 422 So.2d 50, 51 (Fla. 3d DCA 1982),- is that where a trial judge sitting as a fact finder “erroneously admits evidence, he is presumed to have disregarded the [improperly admitted] evidence, and the error of its admission is deemed harmless.” This presumption is overcome only if the record discloses that the trial judge relied upon the erroneous evidence. Id.
In the instant case, the trial judge explained to the defendants that evidence of two of the four robberies referred to during opening statements was inadmissible under Williams v. State, 68 So.2d 583 (Fla.195[3]), and then she gave the defendants the option of moving for mistrial and having the case heard by a jury or proceeding with her sitting as the trier of fact. The defendants chose to rely on the judge’s ability to disregard the inadmissible evidence. Moreover, because the trial judge expressly stated that she was excluding evidence of the non-charged crimes and that the evidence of guilt in the charged crimes was overwhelming without the excluded evidence, the defendants have failed to overcome the presumption that the court’s verdict was based solely upon *737 admissible evidence. See Arroyo, 422 So.2d at 51.
Id. at 190-91 (emphasis supplied); see also King v. State, 988 So.2d 111, 118 (Fla. 4th DCA 2008) (noting that “in a bench trial, there is a presumption that the trial court disregards any erroneously admitted evidence” and that the trial court “specifically stated that it was not considering testimony other than that directly related to the murder”); Schwarz v. State, 695 So.2d 452, 455-56 (Fla. 4th DCA 1997) (substantially similar); Wythers v. State, 348 So.2d 390 (Fla. 3d DCA 1977) (holding that trial court’s admission of improper comment on a defendant’s post -Miranda silence did not require reversal where the record expressly reflected that the trial court recognized and disregarded the improper evidence); Capitoli v. State, 175 So.2d 210, 212 (Fla. 2d DCA 1965) (holding error, if any, in admission of challenged evidence where the trial judge explicitly stated that he based his findings upon certain evidence and that he disregarded the challenged evidence was harmless). Therefore, the subsequent decisions of the Third District demonstrate that the court in J.D. did not implicitly overrule its decision in Arroyo, and instead has further refined its application of the standard of review for circumstances where an express statement on the record also supports a presumption that the improper matters were disregarded.
Accordingly, we must also disapprove the decision in J.D. to the extent it declined to apply the presumption on the basis that it would be “nothing more than one which requires this court’s subjective interpretation of what the trial judge did or did not consider, inasmuch as the record presented for review is silent on this point.” J.D., 553 So.2d at 1319; see also T.E. v. State, 643 So.2d 122, 122 (Fla. 3d DCA 1994) (relying on J.D. as authority for its holding that the trial court’s improper consideration of a comment on the juvenile’s right to remain silent was “reversible error unless the state proves beyond a reasonable doubt that this constitutional error did not contribute to the finding of guilt”). Instead, the district court in J.D. conducted an “objective interpretation of the evidence presented in the record on review” and reversed the adjudication and remanded for a new hearing. 553 So.2d at 1319. Although it may be generally preferred that an appellate court conduct an objective review of the record rather than a speculative inquiry into the mind of the trier of the fact, the application of the presumption and the underlying principles supporting the rationale for its function, belie the Third District’s determination that the presumption should not be initially considered in the absence of record evidence which rebuts the presumption. Thus, we disapprove J.D. to the extent it holds that there is no presumption that a trial court has disregarded exposure to inadmissible or improper evidence during a bench trial.
CONCLUSION
When an appellate court is reviewing a bench trial, it should presume that the trial court judge rested its judgment on admissible evidence and disregarded inadmissible evidence, unless the record demonstrates that the presumption is rebutted through a specific finding of admissibility or another statement that demonstrates the trial court relied on the inadmissible evidence. When improper evidence is admitted over objection in this context, the trial court must make an express statement on the record that the erroneously admitted evidence did not contribute to the final determination. Otherwise, the appellate court cannot presume the trial court disregarded evidence that was specifically admitted as proper. In addition, the appellate court still must *738 conduct a harmless error analysis to determine whether there is a reasonable possibility that the challenged error affected the final judgment. This harmless error analysis is necessary to prevent reversals based on the admission of inconsequential or immaterial evidence, which can sometimes occur during a bench trial for the purposes of expediency and conservation of judicial resources.
Accordingly, we quash the decision below and remand for reconsideration in light of the standard of review articulated in this opinion and as applied in Parks. We disapprove the decisions discussed in this opinion to the extent that they hold a presumption of disregard applies when a trial court, during a bench trial, admits evidence over objection and does not expressly state on the record that this evidence did not contribute to the final judgment or determination. Lastly, we disapprove J.D. to the extent it holds that there is no presumption of disregard for a trial court’s exposure to inadmissible or improper evidence during a bench trial.
It is so ordered.
POLSTON, LABARGA, and PERRY, JJ, concur.
CANADY, C.J., concurs in result with an opinion.
PARIENTE, J., concurs in result with an opinion, in which QUINCE, J., concurs.

. Although unrelated to the conflict issue presented, Petion also asserted that the trial court erred in denying his motion for judgment of acquittal because the State failed to prove that he possessed the marijuana found inside the jointly occupied vehicle. The Fourth District reversed the conviction and sentence for possession of cannabis with in *729 tent to sell because the evidence did not establish Petion’s constructive possession of the marijuana found inside the vehicle. See Petion, 4 So.3d at 84.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Petion was released from incarceration on March 4, 2010. Notwithstanding Petion’s release, we exercise our discretion to retain jurisdiction in this case to address the conflict and resolve the uncertainty with regard to the presumption applied to bench trials. See State v. Matthews, 891 So.2d 479, 483 (Fla.2004). Mootness does not divest this Court of jurisdiction because conflict still exists in the decisions, and the issue presented is capable of repetition yet evading review. See id. (citing Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984)). Accordingly, we elect to proceed with review of this issue to clarify the appropriate standard of review for bench trials regardless of Petion’s release from prison.