TAYLOR, J.
 

 Bernard William Reynolds was convicted of the sale of cocaine following a jury trial. He raises two points on appeal: (1) the trial court erred in denying his motion for judgment of acquittal, and (2) the trial court erred in admitting a police officer’s testimony that his conduct was consistent with that of someone conducting a drug transaction. We affirm the trial court’s denial of the defendant’s motion for judgment of acquittal. However, we reverse and remand for a new trial because the trial court reversibly erred in allowing the officer’s testimony regarding general criminal behavior as evidence of the defendant’s guilt.
 

 The State sought to prove that the defendant sold crack cocaine to Andrew Va-lente. At trial, Valente testified that his mother and grandmother drove him to a convenience store and dropped him off so he could make a purchase; his true purpose was to buy cocaine. When Valente arrived at the store, his first contact was with a person whom he described as a short Spanish guy wearing an orange jersey. Valente described the person from whom he purchased crack cocaine as a tall black man with short, scruffy hair. Va-lente was unable to identify the seller in court.
 

 After Valente purchased the crack cocaine, he got back into the family car and was arrested immediately before he left the parking lot. When Valente was arrested, he had the cocaine in his pocket. Valente testified that his memory of events on the date of the incident was fuzzy, and that he occasionally has problems remembering things. He recalled that the man from whom he purchased the crack cocaine was wearing khaki jeans, and that he paid twenty dollars for the cocaine. He never made a pre-trial identification of the seller.
 

 Officer Brown testified that he was on patrol in Boynton Beach when he noticed a red car pull into the north side parking lot of a convenience store. A black male, whom the officer identified in court as the defendant, went over to the vehicle. When asked what the defendant did, Officer Brown responded that he leaned into the vehicle. Defense counsel objected when the officer started to explain the defendant’s actions. The following exchange occurred:
 

 State: Can you tell the jurors what Mr. Reynolds was doing, or what Mr. Reynolds did?
 

 Brown: Okay. Backing up to the time, when someone leans in the car like that it’s consistent—
 

 Defendant: Objection, Your Honor, speculation.
 
 [1]
 

 Court: Overruled.
 

 Brown: It’s consistent with a narcotics or some kind of an interaction with the person inside the vehicle, which in
 
 *543
 
 that area a lot of drug activity takes place.
 

 Officer Brown testified that he then saw the defendant running westbound on the north side of the convenience store. He and another officer followed the defendant in an unmarked vehicle. During that time, Officer Brown heard the defendant yelling to somebody that he “needed two.” The officer explained that this was common street terminology for two rocks — two pieces of crack cocaine.
 

 The officers continued to watch the defendant and followed him as he returned to the convenience store. They saw Valente walk up to the front of the convenience store and briefly speak to a man wearing an orange football jersey, who was talking on a cell phone. The defendant then met up with Valente. Officer Brown observed them engage in a hand-to-hand transaction. On cross-examination, the officer clarified that he did not see any money or drugs exchanged between them; he merely saw their hands touch. After their interaction, Valente walked towards his vehicle, and the defendant walked across the street. Officer Brown conducted a traffic stop on Valente’s vehicle as it was about to pull out of the parking lot. Valente, who was in the rear passenger seat, had what appeared to be crack cocaine in his possession. Officer Brown performed a field test on the substance recovered from Valente; the test results confirmed that it was crack cocaine.
 

 Brown then contacted other officers via radio to take the defendant into custody. Officer William Muhleisen testified and identified the defendant as the person he detained and later arrested pursuant to Officer Brown’s instructions. Muhleisen said that when he made contact with the defendant, the defendant had a $20 bill in his possession. Muhleisen added that another officer who searched the defendant found a total of $21.46 on his person.
 

 Regarding his ability to see the hand-to-hand transaction between the defendant and Valente, Officer Brown explained that he was in an unmarked vehicle about 150-200 feet across the street from the convenience store when the transaction occurred. He said he used a pair of binoculars to monitor the transaction and kept the defendant in constant view the entire time.
 

 A forensic chemist for the Palm ¿each County Sheriffs Office testified that there was cocaine present in one of the crack rocks recovered from Valente. The parties stipulated that the defendant had a $20 bill in his possession when he was arrested, and a total of $21 plus change on his person. They also stipulated that the defendant was not wearing an orange jersey.
 

 After the state rested, the defendant moved for a judgment of acquittal. Defense counsel argued that Valente was unable to identify the defendant as the person who sold him cocaine, that there was no evidence of an actual sale of cocaine, and that there was no DNA evidence linking the twenty dollar bill to Valente or linking the crack cocaine to the defendant. The trial court denied the defendant’s motion for judgment of acquittal and his renewed motion for judgment of acquittal at the close of the evidence.
 

 During closing, the state referred to Officer Brown’s testimony regarding the defendant’s act of leaning into Valente’s ear. The jury found the defendant guilty of the sale of cocaine, as charged. The trial court sentenced him to thirty months in prison.
 

 When we review a denial of a motion for judgment of acquittal, we apply a de novo standard of review.
 
 See Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002). Generally,
 
 *544
 
 an appellate court will not reverse a conviction that is supported by competent, substantial evidence.
 
 Id.
 
 (citing
 
 Donaldson v. State,
 
 722 So.2d 177 (Fla.1998);
 
 Terry v. State,
 
 668 So.2d 954, 964 (Fla.1996)). If, after viewing the evidence in a light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.
 
 Id.
 
 (citing
 
 Banks v. State,
 
 732 So.2d 1065 (Fla.1999)). In moving for a judgment of acquittal, a defendant “admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.”
 
 Beasley v. State,
 
 774 So.2d 649, 657 (Fla.2000) (quoting
 
 Lynch v. State,
 
 293 So.2d 44, 45 (Fla.1974)). “Courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.”
 
 Lynch,
 
 293 So.2d at 45.
 

 Under this standard of review, we affirm the trial court’s order denying the defendant’s motion for judgment of acquittal. Valente testified that he bought cocaine from a person who was later identified, through testimony of law enforcement witnesses, as the defendant. We distinguish
 
 Williams v. State,
 
 976 So.2d 1210 (Fla. 4th DCA 2008), relied upon by the defendant.
 

 In
 
 Williams,
 
 the defendant was convicted of the sale of cocaine and marijuana within 1000 feet of a school and a public housing facility.
 
 Id.
 
 at 1210. We held that the evidence was insufficient to support his convictions.
 
 Id.
 
 at 1212. There, an undercover officer observed the defendant ride his bicycle up to the driver’s side door of a white Nissan, have a conversation with the driver, look around, and then give the driver what the officer believed to be a small object in exchange for money.
 
 Id.
 
 at 1210. The officer did not actually see the object inside the defendant’s hand.
 
 Id.
 
 After the exchange, the defendant yelled out to someone to the east of his location, out of the officer’s sight, and rode his bicycle in that direction.
 
 Id.
 
 He came back about two minutes later and handed the driver of the car a second object.
 
 Id.
 
 Again, the officer could not actually see the object; however, he did not believe that money changed hands during the second exchange.
 
 Id.
 
 The undercover officer radioed a description of the defendant and the driver, and they were both detained.
 
 Id.
 
 at 1211. When the defendant was searched, no drugs were found, but $500 cash was found on his person.
 
 Id.
 
 Two baggies of suspect cocaine and marijuana were found on the driver’s side floor of the white Nissan.
 

 We held in
 
 Williams
 
 that the defendant’s motion for judgment of acquittal should have been granted. We reasoned that “[a]lthough drugs were found in the white Nissan and police had observed an encounter and possible transaction between Williams and the car’s driver, there was no evidence linking the drugs to Williams or in any way linking the possible sources of the drugs found in the car.”
 
 Id.
 
 at 1212. In the instant case, however, the cocaine found in Valente’s possession was linked to the defendant because Valente testified that he had purchased cocaine from a person, whom law enforcement officers identified as the defendant. Thus, the trial court properly denied the defendant’s motion for judgment of acquittal.
 

 The defendant also argues that the trial court erred in admitting testimony concerning general crime behavior. We agree with this point on appeal. Over the defendant’s objection, Officer Brown testified that the defendant approached Valente’s car and leaned into it, consistent with the behavior on someone engaged in a
 
 *545
 
 drug transaction. The law is well settled that “general criminal behavior testimony based upon a law enforcement officer’s observations and experience in the investigation of other cases is inadmissible as substantive proof of a defendant’s guilt, because a defendant has a right to be tried based on the evidence against him or her, not on the characteristics or general behavior of certain classes of criminals in general.”
 
 Baskin v. State,
 
 732 So.2d 1179, 1180 (Fla. 1st DCA 1999) (citations omitted). The “only purpose of testimony regarding criminal behavior patterns ‘is to place prejudicial and misleading inferences in front of the jury.’ ”
 
 Dean v. State,
 
 690 So.2d 720, 723 (Fla. 4th DCA 1997) (quoting
 
 Nowitzke v. State,
 
 572 So.2d 1346, 1356 (Fla.1990)).
 

 In
 
 White v. State,
 
 971 So.2d 972 (Fla. 4th DCA 2008), we reversed a defendant’s conviction for sale or delivery of cocaine where general crime behavior testimony was admitted into evidence at trial. In that case, the evidence against White was based on a videotaped controlled buy made by a confidential informant, who had an extensive criminal record.
 
 Id.
 
 at 973. The videotape showed White and the co-defendant approach the informant’s car window.
 
 Id.
 
 It further showed the co-defendant actually hand the drugs to the informant and take the money. Although the informant testified that White arranged the sale, the videotape was not clear about what White said to the informant. Both men were charged with the sale of cocaine.
 
 Id.
 

 Over a defense objection, the trial court in
 
 White
 
 permitted the supervising detective to testify that in drug transactions it was not uncommon for more than one person to approach the buyer’s window.
 
 White,
 
 971 So.2d at 973. We concluded that this was error, citing numerous cases wherein courts have held such testimony inadmissible to show that the defendant’s conduct “mirrored” that of other drug sellers.
 
 Id.
 
 at 973-74. We also found that the error was not harmless because the detective’s testimony refuted White’s defense that he did not participate in the crime, and “[wjithout the criminal behavior testimony suggesting guilt by comparison, the jury would have been required to decide the case solely from the videotape and the informant’s testimony.”
 
 Id.
 
 at 974.
 

 Similarly, in this case, the trial court erred in admitting the officer’s testimony that the defendant’s act of leaning into the vehicle was consistent with the conduct of someone engaged in a drug transaction. Moreover, we cannot find that the error was harmless, i.e., that “there is no reasonable possibility that the error contributed to the conviction.”
 
 Goodwin v. State,
 
 751 So.2d 537, 541 (Fla.1999) (quoting
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1135 (Fla.1986)). Here, the defendant denied that he sold drugs to Valente, Valente was unable to identify the defendant as the seller, and the officer was unable to actually see the exchange of any drugs or money. Thus, the general drug transaction behavior was a critical aspect of proof in relation to the other evidence of guilt in this case.
 
 Cf. Armalin v. State,
 
 884 So.2d 458 (Fla. 4th DCA 2004) (holding that police officer’s testimony regarding the common practice of drug dealers to conceal narcotics in their mouth, though erroneous, was harmless where undercover officer had bought drugs directly from the defendant).
 

 Accordingly, we reverse the judgment of conviction and sentence for sale of cocaine and remand for a new trial.
 

 Affirmed in part, Reversed in part, and Remanded for a new trial.
 

 HAZOURI and LEVINE, JJ., concur.
 

 [1]
 

 . Although general criminal behavior testimony is usually objected to on the basis of relevancy, we note that such testimony was deemed inadmissible in a case concerning common behavior of drug dealers where the testimony was objected to at trial as speculative.
 
 See Petion v. State,
 
 48 So.3d 726, 728 (Fla.2010).