# Third District Court of Appeal

## State of Florida

Opinion filed February 13, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-494
Lower Tribunal No. 16-1239
_____

**J.R., a Juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Orlando Prescott, Judge.

Carlos J. Martinez, Public Defender, and Natasha Baker-Bradley, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Kayla H. McNab, Assistant Attorney General, for appellee.

Before LOGUE and MILLER, JJ., and SUAREZ, Senior Judge.

MILLER, J.

Appellant, J.R., a juvenile, appeals from an order withholding adjudication of delinquency and placing him on probation for possession of cocaine, in violation of section 893.13, Florida Statutes (2016). Because the trial court erred in expressly admitting prejudicial evidence immaterial to the charged offense, over objection, and failed to expressly disavow reliance upon the evidence in rendering a decision, we cannot conclude under the facts presented that any associated error was harmless. Accordingly, we reverse and remand for a new trial.

**FACTUAL BACKGROUND AND TRIAL COURT PROCEEDINGS**

J.R. was charged with one count of cocaine possession. At the adjudicatory hearing, the State called several witnesses, beginning with Officer Nestor Amoris of the City of Miami Police Department Homicide Unit. Officer Amoris testified that on May 4, 2016, he was patrolling Little Havana with a patrol trainee, Officer Earl Simington. In the early morning hours, Officer Amoris approached a closed grocery store. There, he noticed J.R. pacing up and down on the sidewalk in front of the store. As Officer Amoris drew nearer to the storefront, J.R. promptly seated himself on the ground. According to his testimony, he then observed J.R. discarding an item known as a "Dutch cigar wrapper." Officer Amoris immediately retrieved the item and discovered crack cocaine partially concealed within plastic wrap. He impounded the narcotics and took J.R. into custody.

The transcript reveals the following exchange during direct examination:

2

> State: Can you tell us a little about the area that you were patrolling?
> Officer: Yes. They had us concentrate in particular areas that we were having trouble with. We had a lot of shootings, stabbings-
> Defense: Objection, relevance.
> Officer: -narcotics sales.
> Judge: Overruled.

During cross-examination, the transcript reflects the following:

> Defense: And people hang around this area, right?
> Officer: People hang around and use narcotics in that area. And buy narcotics, and sell narcotics.

The State then called a criminalist and Officer Simington as witnesses. Officer Simington testified that, on the evening in question, he observed J.R. sitting on steps in front of the store beside a plate of food. There was insufficient lighting to see clearly. He approached J.R., walking slightly behind Officer Amoris. Officer Simington did not see anything in J.R.'s hands and he did not see J.R. discard the narcotics. However, he did witness Officer Amoris retrieving the narcotics.

After the State's presentation of evidence, J.R. testified in his own defense. He stated that his mother was in the hospital on the evening of his arrest. He was waiting for his brother to return from work, and did not wish to remain home alone, thus he purchased food from a nearby café. After selecting a location to consume his meal, he was approached by the law enforcement officers. J.R. denied possessing or discarding any narcotics, but conceded that he observed

3

Officer Amoris recover plastic-wrapped cocaine approximately five feet from his location.

During the State's closing, the prosecutor argued, without further objection, that the neighborhood where J.R. was arrested was "known for its issues." At the conclusion of the hearing, the trial court found J.R. to have committed a delinquent act, and, in so ruling, stated the following:

> After listening to the testimony of the witnesses, and hearing argument of counsel, the sole count of the Petition is possession of a controlled substance, possession of cocaine, it comes down to a credibility determination.
>
> Because the testimony adduced in the State's case in chief was sufficient to withstand a Judgment of Dismissal that there was a prima facie case established.
>
> Then the Respondent took the stand. And he denied that he was in possession of anything. He said it was found approximately five feet away from him.
>
> He didn't know it was there. The police picked it up, and it was approximately five feet away from him.
>
> After listening to the testimony of the witnesses, and making credibility determinations, the Court will find the Respondent delinquent.

The court withheld adjudication of delinquency and placed J.R. on supervision. This appeal followed.

## LEGAL ANALYSIS

4

J.R. contends that the admission of testimony characterizing the area as known for narcotics sales was improper. We agree. "In Florida, evidence that a criminal defendant was arrested in a high crime area is generally inadmissible." Latimore v. State, 819 So. 2d 956, 958 (Fla. 4th DCA 2002). "Such evidence is usually considered irrelevant to the issue of guilt and unduly prejudicial because of its tendency to establish guilt by association." Id.; see also Fleurimond v. State, 10 So. 3d 1140, 1146 (Fla. 3d DCA 2009) ("Florida law disapproves references to the area in which a defendant is observed as a location known to be a place where drugs are sold because such evidence is irrelevant to the issue of guilt.").

In E.M. v. State, 61 So. 3d 1255, 1256 (Fla. 3d DCA 2011), an appeal of a juvenile delinquency proceeding, we considered the propriety of admitting testimony that the area where E.M. was observed was "what we call a hot area, a hot spots for narcotics," that had been checked "the prior week for narcotics." We found error, reiterating the principle that "Florida law disapproves references to the area in which a defendant is observed as a location known to be a place where drugs are sold because the evidence is irrelevant to the issue of guilt." Id. at 1256-57, citing State v. Johnson, 575 So. 2d 1292 (Fla. 1991) and Gillion v. State, 573 So. 2d 810, 811 (Fla. 1991).

Likewise, in Lowder v. State, 589 So. 2d 933 (Fla. 3d DCA 1991), we considered a detective's comments characterizing the location of a crime as a

5

"narcotics area." There we found that "[i]t is well settled that reference to the area in which a defendant is arrested as a location known to be inhabited by drug dealers is prohibited because such reference is irrelevant to the issue of guilt." Id. at 935, citing Beneby v. State, 354 So. 2d 98 (Fla. 4th DCA 1978), cert. denied, 359 So. 2d 1220 (Fla. 1978).

Here, law enforcement testimony regarding shootings, stabbings, and using, buying, and selling narcotics, in the neighborhood in which J.M. was apprehended, was irrelevant to a determination of delinquency. Thus, the trial court erred in admitting the testimony.

In Petion v. State, 48 So. 3d 726 (Fla. 2010), the Florida Supreme Court considered the effect of improperly admitted evidence in the context of a bench trial. Noting the well-established legal proposition that a trial court is presumed to have disregarded inadmissible evidence, the court announced an exception to the general rule. Id. at 730. Specifically, the court found: "It is logical and practical that the presumption must be overcome where a trial court judge admits evidence over objection, because the judge would understandably believe that the evidence is properly before the court for consideration." Id. at 737. Thus, the court expressly rejected the initial presumption in this scenario, concluding:

> When an appellate court is reviewing a bench trial, it should presume that the trial court judge rested its judgment on admissible evidence and disregarded inadmissible evidence, unless the record demonstrates that the presumption is rebutted through a specific finding of

6

admissibility or another statement that demonstrates the trial court relied on the inadmissible evidence. When improper evidence is admitted over objection in this context, the trial court must make an express statement on the record that the erroneously admitted evidence did not contribute to the final determination. Otherwise, the appellate court cannot presume the trial court disregarded evidence that was specifically admitted as proper. In addition, the appellate court still must conduct a harmless error analysis to determine whether there is a reasonable possibility that the challenged error affected the final judgment. This harmless error analysis is necessary to prevent reversals based on the admission of inconsequential or immaterial evidence, which can sometimes occur during a bench trial for the purposes of expediency and conservation of judicial resources.

Id. at 737-38.

Here, although the trial court did not include the erroneously admitted evidence in its oral findings, it did not make an express statement on the record that the evidence did not contribute to its final determination. Thus, we cannot presume that the evidence was disregarded. Nonetheless, pursuant to Petion, we are directed to perform a harmless error analysis.

"[T]he mere identification of an area as a high crime area does not per se constitute prejudicial error." Dorsey v. State, 639 So. 2d 158, 159 (Fla. 1st DCA 1994), citing Gillion, 573 So. 2d 810. "Whether such testimony is unduly prejudicial depends upon the facts of each case." Id., citing Gillion, 573 So. 2d at 812. "Where the proof of guilt is so convincing that a person would clearly have been found guilty even without collateral evidence introduced in violation of the

7

evidence code, the violation of the code may be considered harmless." Petion, 48 So. 3d at 735.

As aptly characterized by the trial judge, the case below hinged on a "credibility determination." Officer Simington never saw J.R. in possession of the narcotics. Thus, the case rested upon whether the trial court believed Officer Amaris observed J.R. throw the same plastic wrapper that was recovered containing narcotics or whether the trial court believed J.R.'s diametrically opposed version of events. The reference to the inadmissible testimony was not isolated, as the record contains two testimonial references to variations on the "high crime" nature of J.R.'s neighborhood. This error in admission was compounded by the prosecutor's prejudicial inference in closing argument.

Under these circumstances, and applying the holding of Petion, we are unable to conclude that the introduction of the inadmissible collateral evidence did not contribute to the finding of delinquency, thus, the error may not be considered harmless. 48 So. 3d 726.

For the foregoing reasons, we reverse and remand for a new trial.

Reversed and remanded.